Roth *v.* Wells.

[ALBANY GENERAL TERM, September 7, 1863. *Gould, Hogeboom* and *Miller,* Justices.]

---

## ROTH & ROTH *vs.* WELLS.

A levy upon goods in a store, under an execution, is a continuing levy covering goods purchased by the judgment debtors subsequent to the levy and during the life of the execution, and placed in the same store; such goods being of the same general description as those levied on, and having been purchased to supply the place of goods sold by the debtors, after the levy, or as an addition to the original stock.

Goods and chattels of a judgment debtor, situated within the jurisdiction of the sheriff, are bound by the lien of the judgment from the time of the delivery of the execution, and no levy is essential to create such lien.

Goods levied upon, being in the custody of the officer, if a portion of them are removed and sold by the debtor, and others of a similar description are put in the same place, the property substituted takes the place of that which has been taken away, and becomes subject to the lien of the execution, without any new levy.

If under such circumstances, the debtor refuses, when called upon, to designate the property which he claims is not covered by the levy, he will be

Roth *v.* Wells.

estopped from maintaining an action against the sheriff to recover the value of property taken by him under the execution.

Where goods levied on are left by the officer with the judgment debtor, and he confounds them with other goods, belonging to him, so that they cannot be distinguished, and the debtor refuses to point out the property levied on, he cannot complain if some of his own goods, not embraced in the levy, are taken by the sheriff.

APPEAL from a judgment entered at the circuit, and from an order of the special term, denying a motion for a new trial. The action was brought to recover the value of a quantity of goods taken by the defendant from the store of the plaintiffs, and was tried at the Rensselaer circuit in May, 1860, before Justice HOGEBOOM. The defendant justified the taking as sheriff of the county of Rensselaer, by virtue of three executions in favor of John A. Aubray, against the plaintiffs. These executions were delivered to the defendant on the 24th of August, 1857. Their aggregate amount was $1755.98, with interest from August 3, 1857. The plaintiffs claimed that on the 25th of August, 1857, the executions were settled, and that they gave the defendant their check upon a bank in Troy, for $1804, with interest, and received from the defendant a receipt in full for the executions. They also delivered to the defendant, as collateral security for the check, their two notes, indorsed by David Dater, amounting to $2000. The defendant claimed that the checks and notes were received conditionally, and that the receipt was given only at the earnest solicitation of one of the plaintiffs, to be used as a protection of his brother, whose property had been levied upon at Utica, under executions issued on the same judgments. The check not having been paid when presented at the bank, suits were brought by the defendant upon the check, and also upon the notes held as collateral. These suits were subsequently discontinued. Neither the check nor the notes were paid, and on the 18th of November, 1857, the defendant took from the plaintiffs' store goods appraised to be worth $6635.23 to satisfy the executions. These goods were taken under a claim that the defendant had made

a levy, on the 24th of August, upon the goods then in the store, and indorsed the same on the execution, and that in the alleged settlement made on the 25th of August this levy had not been abandoned.  There was a conflict of evidence as to the levy being under and indorsed upon the executions, and upon most of the material questions in the case.  Of the goods taken, but a portion were in store at the time of the alleged levy.  A share of them had been purchased after the return day of the executions.

The judge, upon the trial, submitted it to the jury as a question of fact to be decided upon the evidence, whether a levy had been made by the defendant, as alleged by him, on the 24th of August.  He also instructed the jury that if the check and notes had been received in payment of the executions, an agreement that the executions might be enforced in case the check was not paid, would be illegal, and the defendant would be liable for taking the goods.  The judge further charged the jury that if a sufficient levy had been made, on the 24th of August, and the executions remained in force when the goods were taken, they might regard the levy as continued and covering the goods purchased subsequent to the levy, and during the life of the executions; such goods being in the same place, of the same general description as those levied upon, and being purchased to supply the place of goods sold by the debtor after the levy, or making additions to the stock.  To this part of the charge the counsel for the plaintiffs excepted.

The jury rendered a verdict for the defendant.  The plaintiffs, at the same circuit, moved for a new trial, upon the exceptions taken, and also for insufficient evidence.  The motion for a new trial was denied, and the plaintiffs appealed.

*Ira Harris,* for the appellants.

*W. A. Beach,* for the defendant.

Roth *v.* Wells.

*By the Court,* MILLER, J. It is insisted by the plaintiffs' counsel that the judge erred in charging the jury that if a sufficient levy had been made on the 24th of August, and the executions remained in force when the goods were taken, they might regard the levy as covering the goods purchased subsequent to the levy and during the life of the executions. It should be observed that the judge also added, in connection with the part of the charge objected to, that such goods must be in the same place, and of the same general description, as those levied upon, and be purchased to supply the place of goods sold by the debtors, after the levy, or in making additions to his stock. This objection presents the main point in the case, and involves the question whether a levy made at a particular time overreaches and includes property subsequently acquired during the lifetime of the execution and prior to a sale under it. Was it in fact a continuing levy covering goods afterwards received and placed with the property already levied upon, instead of what had been sold, or as an addition to the same stock? 2 *R. S. p.* 365, § 13, provides that whenever an execution shall be issued against the property of a person, his goods and chattels situated within the jurisdiction of the officer shall be bound from the time of the delivery of the same to be executed. (*See also Ray* v. *Birdseye,* 5 *Denio,* 619.) From this provision of the statute it would appear that the goods and chattels of the plaintiffs were bound from the time of the delivery of the executions, and no levy was essential to create the lien. This lien would be effectual during the lifetime of the executions, and by virtue of it the sheriff had a perfect right to seize and to sell the property subject to the lien. Whatever goods were acquired prior to the 24th of October were therefore subject to the lien, and liable to be sold during the life of the executions. The issuing of the executions and their delivery to the officer was then a constructive levy, which held the property until the return day of the process. There can be no question that during this period the sheriff could have proceeded to sell all

the goods of the defendant under the levy he had made, and no further levy was essential during the time which the executions had to run. An actual levy having been made, and the property remaining in the hands of the judgment debtors, it would seem to be unnecessary that a new levy should be made on the property subsequently acquired. It was in one place ; one single stock of goods ; kept together in possession of the judgment debtors, as the agent of the sheriff ; for his benefit, to be delivered to him when demanded. The property was in custody of the officer, subject to his command, to satisfy the executions. After the property has been seized by the sheriff it is in the custody of the law or of one of its ministers, until a sale ; and a new levy under a second execution is unnecessary. (*Birdseye* v. *Ray*, 4 *Hill*, 160, 161. *Van Winkle* v. *Udall*, 1 *id.* 559. 17 *John.* 116.) The goods levied upon being in the custody of the officer, upon a portion of them being removed and sold by the debtors, and others of the same description being put there, I am inclined to think that the property substituted took the place of that which had been previously taken away. The charge of the judge embraced only such property, and it would be but reasonable and fair that a party who had assumed thus to remove the property without the authority of the officer, should not be permitted afterwards to claim that a prior levy did not cover that which he had put with it or in place of what he had sold and disposed of. It makes no difference that this specific property was not seized prior to the return day of the executions. It was subject to the lien of them. The executions bound the property, and it was liable to be sold under them. A levy had in fact been made upon other property of the party ; and it does not rest with the debtor to insist that the right of the sheriff was gone because he was indulged and the lien was not enforced.

Independent of the views already expressed, I am of the opinion that the plaintiffs having refused when called upon to designate the property which they claimed was not covered

by the levy, are estopped from a recovery in this action. Where goods of a stranger are in possession of a debtor, and so mixed that the sheriff on due inquiry cannot distinguish them, the owner cannot maintain an action against him for taking them, until notice and a demand of the goods. (7 *Mass. Rep.* 123.)

So also if a person having charge of the property of another so confounds it with his own that it cannot be distinguished, he must bear all the inconvenience of the confusion ; and he must distinguish his own property or lose it. (*Hart v. Ten Eyck,* 2 *John. Ch.* 108.) In the case at bar, the defendant had the legal custody of the goods. He had a special property in them for the purpose of making the amount due upon the executions. They were left with the plaintiffs subject to the lien of the executions. The plaintiff had no right to sell or dispose of them until the executions were paid. At most, they had but a right to what remained upon a sale of the goods after the executions were satisfied. Whether regarded as the judgment debtors, or as having charge of the property for the defendant, they assumed to sell and dispose of it, and confound it with their own, so that it could not be distinguished. When called upon for that purpose, they refused to point out the goods which were there when the defendant made the levy. They have no right, therefore, to complain that some of their own goods were taken, and are precluded thereby from a recovery in this action.

It is also alleged that upon the question whether a levy was in fact made on the 24th of August, the verdict is against the evidence, and that no levy was in fact made. There was certainly some evidence to show that a levy was made. The property was in view of the officer. The evidence shows that he went to the store where the goods were, and looked them over. They were under his control, and it is claimed that the levy was indorsed upon the executions. Although there was a conflict as to the levy and the indorsement, yet it cannot be claimed that there was such a preponderance of evi-

dence in favor of the plaintiffs as to authorize this court to set aside the verdict upon that ground.

The same remarks are applicable upon the question of payment of the executions. The whole evidence was fairly submitted to the jury, and they have found adversely to the plaintiffs upon that point, and their finding cannot now be disturbed.

The question whether any of the goods purchased after the 24th of October were taken by the executions depended upon the testimony of one of the parties, and was fairly left to the jury as a question of fact. The court charged the jury that the defendant was liable for the goods purchased after the 24th of October, and gave proper instructions in regard to the credibility of the party upon whose testimony the claim for those goods was based. The jury having found against the plaintiffs, they are concluded.

A new trial must be denied, and the judgment affirmed, with costs.

