WALTER S. BOND, Appellant, *v.* JAMES S. WILLETT, Administrator, etc., Respondent.

To make a valid levy upon goods, it is necessary that the property should be
in view and under control of the officer; that he should assert such control
either by removing the property, or asserting the levy, and that some mem-
orandum of the levy should be made at the time.

The leaving of the goods in the possession of the debtor, although at the risk
of the officer, does not invalidate the levy.

THE plaintiff appeals from a judgment in favor of the
defendant, who was sheriff of the city and county of New·
York. The action was to recover seventeen pieces of silk
levied on by the sheriff under an execution, in favor of F.
A. Conkling against Remsen & Dingee, who were partners and
were in possession of a stock of goods, of which the silks were
a portion, · in their store on Sixth avenue, in New York.
Remsen & Dingee failed in business, and were largely
indebted to Bliss, Briggs and Douglass. They sold to Bliss,
Briggs and Douglass their whole stock of goods for a gross
sum agreed on between them. The sale took place on the
12th September, 1856. About the middle of September the
plaintiff bought the stock of goods from Bliss, Briggs and
Douglass. The store was then closed, and the plaintiff had
heard of the failure of Remsen & Dingee.

Previous to the sale by Remsen & Dingee of their stock,
a judgment was recovered against them in favor of Conkling
and others on 27th August, 1856, and an execution was issued
thereon on the same day to the sheriff of New York. On
the same day the deputy went with it to the store of Remsen
& Dingee. He saw Mr. Dingee and told him he had an
execution against the concern. Dingee asked who issued it;
the deputy showed it to him. Dingee said it was premature.
Deputy told him he must levy on the property. Dingee said
he would like to see his counsel, and named Mr. C. B. Smith. ·
The deputy said he had no objection to his seeing his coun-
sel before he removed the property. He then told him he

48

must make his levy, and took up one of the bill-heads of Remson & Dingee and on it made memorandum of levy. This memorandum was produced in court, and among other things contained fifty pieces of silk (black and colored). He, at the same time, made an indorsement on the execution, 27th August, 1856, levied on stock of dry-goods in store 204 and 206 Sixth avenue.

On the next day an order was served on the sheriff staying all proceedings.

On the 20th September, 1856, the sheriff went to the store and found persons who said they were acting for plaintiff measuring the goods.

Bond claimed to own the goods. The deputy sheriff and Bond agreed that the sheriff should abandon his levy on all the goods but the black silks, and Bond agreed to buy them in for $2,000. Bond told deputy the silks were a part of the stock of Remsen & Dingee. He set them apart and then replaced them.

Defendant's counsel on the trial claimed that as there had been an actual levy proved, the plaintiff must show he had no notice of the execution.

The plaintiff denied that there had been any levy proved, or if there was that it had been abandoned. The plaintiff claimed to submit the questions of abandonment and notice to the jury, which was refused by the court, and the jury were instructed to find a verdict for the defendant.

The jury found for the defendant, and the exceptions were directed to be heard at the General Term, where judgment was ordered on the verdict for the defendant, and the plaintiff appealed to this court.

*John H. Reynolds*, for the appellant.

*A. S. Vanderpoel*, for the respondent.

INGRAHAM, J. The principle question in this case is, whether there was a valid levy on the silks in controversy. If there was and it was not abandoned by the sheriff afterward, the plaintiff could not recover.

That there was a sufficient levy as against the debtors in the execution there can be no doubt. This was so held in *Roth* v. *Wells*, in this court, decided at June Term, 1864. In that case the sheriff went to the store of the defendant in the execution, saw the goods there. The sheriff showed the execution to the debtor, who told him he need not levy but would pay in a few days. Sheriff told him he could hold his levy, but would give him time to pay. This was all that was done, and SELDEN, J., says: "The goods being present and within the power of the sheriff, these circumstances constituted such an exercise of dominion over them as amounts to a levy at least as against the defendants in the execution." (23 Wend., 490 ; 4 Kern., 70.)

I consider that case so conclusive as to the sufficiency of the levy so far as relates to the debtor, that it is unnecessary to examine any other authorities on that point. (5 Denio, 619.) The question then is what additional facts are necessary to make out a levy that will bind the property in the hands of purchasers. The statute only protects purchasers in good faith, between the delivery of the execution to the sheriff and the actual levy. (2 R. S., 366, §. 17.) "The title of a purchaser in good faith of any goods acquired prior to the actual levy of an execution, without notice of any such execution being issued, shall not be divested by the fact that such execution had been delivered to an officer to be executed before such purchase was made." If the levy has been actually made before the purchase it is as effectual against the purchaser as it is against the debtor.

In *Ray* v. *Harcourt* (19 Wend., 495), NELSON, Ch. J., says : "What constitutes a levy according to the practice in this State has been well settled and is not now open to dispute. The officer must take actual possession, and for this purpose goods should be within his view and subject to his disposition and control. It is not necessary that he should remove them or leave an assistant in possession. They may be left with the defendant at the risk of the plaintiff or of the officer, or security for delivery at a future day may be taken." This case was approved in *Van Wyck* v. *Pine* (2

Hill, 666), where it is said: "To constitute a valid levy, the goods should be within the view of the officer and subject to his control." (See also *Westervelt* v. *Pinckney*, 14 Wend., 123.) In *Connah* v. *Hale* (23 Wend., 462), it was held that seeing the goods in boxes, making a memorandum of them on the execution, and declaring that he had seized them, was sufficient to authorize the owner to maintain trespass, although the goods were in no way taken away or interfered with." In *Camp* v. *Chamberlin* (5 Denio, 198, BEARDSLEY, Ch. J., says: "In order to constitute a valid levy as to third persons the goods must not only be within view of the officer, but must be subjected to his control. He must take actual possession, which, although the goods are present can only be done by manual acts, or by an oral assertion that a levy is intended, and which is acquiesced in by those who are present and interested in the question. There must be possessory acts to indicate a levy or it must be asserted by word of mouth, so that what is thus done by the officer if not justified by the process will make him a trespasser." In *Green* v. *Burke* (23 Wend., 490), COWEN, J., says: "An actual taking of the goods does not necessarily imply an actual touching of the goods, but merely such a course of action as is calculated to reduce them to the dominion of the law. And in *Barker* v. *Binninger* (4 Kern., 270), JOHNSON, J., held that a manual interference with the property was not necessary to the validity of the levy. He says: "An assertion of right by an officer in virtue of process in his possession in respect to goods within his power is an actual taking possession of them."

From this examination of the cases there can be no difficulty in ascertaining what constitutes a valid levy either against the debtor or against any persons claiming title through him to the property:

First, the property must be in the view and under the control of the officer.

Second, the officer must take possession of the property either by removing or by an oral declaration that a levy is

intended, and that the officer claims to hold the goods under such levy.

Third, an inventory, or, at least, a memorandum of the levy should be made at the time.

Fourth, leaving the goods in the possession of the debtor until the sale, is at the risk of the officer, but does not invalidate the levy.

The facts proven in this case, in my judgment, show a sufficient levy on the part of the sheriff to hold the property even against a subsequent *bona fide* purchaser. He went into the store where the property was, looked at it sufficiently to ascertain the character of the goods before him, informed the debtor that he had an execution against him, and when the debtor remonstrated as to the regularity of the execution, he insisted on the necessity of his making a levy. When the debtor still asked for time to see his counsel, the officer was willing to give him time to see his counsel, but still insisted on the performance of his duty in making the levy; and in his presence took up a piece of paper and made an inventory of the articles levied on, which he placed within the execution, and indorsed upon the process the fact of having levied that day on the stock of goods.

I am at a loss to see what other acts the sheriff could have done to make the levy more valid except to remove the goods from the debtor's possession. Had such removal taken place, then no doubt would have been expressed as to the validity of the levy. So long ago as the case of *Butler* v. *Maynard* (11 Wend., 548), it has been held that leaving the property in possession of the debtor for a reasonable time, and without an improper motive, after the levy, was not fraudulent, but the rights of the plaintiff and officer remained in full vigor. It is not necessary that the officer should measure or weigh the goods, or ascertain the exact quantity of each before the levy is complete. That he can do afterward, if necessary, before the sale.

It is urged by the appellant's counsel that there is no evidence that the silks in controversy were in sight at the time of the levy. There is no proof that they were not. The in-

ventory made contains fifty pieces of silk (black and colored); and in the absence of any evidence to the contrary the presumption is, that they were before him. If the plaintiff intended to rely on this ground he should have shown that the silks in question were not in the store when the levy was made.

There is, however, another fact in this case which should estop the plaintiff from denying that these goods were a part of those levied on at that time by the officer. In order to enable the plaintiff to dispose of the stock of goods he agreed with the officer, if he would abandon the levy on the residue of the goods, he would lay out these silks as the silks to be taken under the execution. He said they were sufficient for that purpose, tied them up himself, and agreed to bid for them if sold, enough to satisfy the execution. After having obtained a release of all the other property covered by the levy, it is too late for the plaintiff to urge that the silks he persuaded the officer to hold under his levy were not a part of the goods originally seized by him.

The case depended entirely upon the validity of the levy, and on this point there was but one witness, and his statement was uncontradicted. It became a question of law whether the levy was sufficient, and there was no question of fact to go to the jury. The court properly instructed the jury to find for the defendant.

The judgment should be affirmed with costs.

Davies, J. This action is in the nature of replevin, brought by the plaintiff, to recover certain goods taken by and in the possession of the defendant intestate, as sheriff of the city and county of New York. He claimed to hold the property by virtue of a levy thereon made on the 27th of August, 1856, under and by virtue of an execution issued out of the Supreme Court, in favor of Frederick A. Conkling, and others, against Remsen & Dingee. The defendants in the execution were copartners, under the name of Remsen & Dingee, merchants, and doing business and having their store at Nos. 204 and 206 Sixth avenue, in said city. It was proved by

the deputy-sheriff, the only witness examined on the trial as to the levy, that immediately upon the receipt of the execution, he proceeded to Remsen & Dingee's store, and announced his business to the debtor Dingee, told him he had an execution against the firm, showed him the execution and told him, notwithstanding Dingee's objection, that the judgment had been prematurely perfected, that he "must act under this writ, and must levy on the property." Dingee wished to see his lawyer, the witness told him he must make his levy, and he took up one of the bill-heads of the firm and on it made a memorandum of levy. He testified, " I also made an indorsement on the execution in these words : 27th August, 1856, levied on stock of dry goods in store 204 and 206 Sixth avenue."

By an arrangement made between the officer and Dingee, the officer agreed to leave the goods levied on in the store, and the next day an order staying proceedings on the execution was served on the sheriff, and which was not discharged until the 19th or 20th of September following, when the officer went to the store and took possession of the goods. The goods were then claimed by the plaintiff as having been purchased by him from the firm of Bliss, Briggs & Douglass, who, it was alleged, purchased the same from Remsen & Dingee, the defendants in the execution, on or about the 12th of September, 1856, and the goods claimed by the deputy sheriff to be levied on, were sold by Bliss, Briggs & Douglass, to the plaintiff Bond, on the 19th of September, 1856.

On the 20th of September 1856, after the order staying proceedings had been vacated, the deputy sheriff called at the store and found Bond, the plaintiff, there, who claimed the silks and who was then informed of the levy and the claim of the sheriff thereunder. The latter then took possession of the silks, and the plaintiff brought this action. On the trial, the defendant's counsel claimed, that, there being an actual levy proved, the plaintiff, before he could recover, must show that he had no notice of the execution. The plaintiff claimed that there had been no actual levy, and that even if there had been, it had been abandoned. The court decided as matter

of law, that there had been an actual levy. The plaintiff then claimed to go to the jury on the question of abandonment, and also on the question of notice of execution issued. Both of these claims were refused by the court, and the plaintiff's counsel excepted to each of said refusals, and the judge thereupon instructed the jury that there was nothing in the case for them to pass upon except the value of the property, and that under the evidence they must find a verdict for the defendant, assessing the value of the property. To which instructions of the judge and any point thereof, the plaintiff's counsel then and there excepted, and the jury found a verdict for the defendant assessing the value of the goods, and damages for their detention at $1,868.48, and six cents damages. And thereupon the judge directed that the hearing upon the said exceptions should be had in the first instance, at the General Term.

And the General Term, on the hearing of said exceptions, overruled the same, and rendered judgment upon said verdict for the defendant for the sum of $2,429.94, and the plaintiff thereupon appealed to this court. Pending this appeal the defendant died, and the suit has been revived, by making his administrator party defendant. At the common law no levy upon personal property was necessary, the goods were bound from the award or teste of the execution, and the sheriff could take the goods out of the hands of even a *bona fide* purchaser. (Anonymous, Cro. Eliz., 174; *Burcher* v. *Wisemand*, id., 440.)

As a judgment when entered during the term had relation back to the first day of the term, the execution could be tested as of the first day of the term, so it might well happen that the title of the sheriff was superior to that of a *bona fide* purchaser, even though he had become such purchaser before the entry of the judgment.

To remedy the evils which this relation of the writ occasioned, the Statute of Frauds (29, Car. 2d, ch. 3, § 16), enacted that no writ of *fieri facias*, or other execution, should bind the property or the goods of the debtor but from the time of the delivery of the writ to the sheriff, and the sheriff

was required to indorse upon the writ the time of its receipt by him.

This provision was early incorporated into the legislature of this State. The present provision of the Revised Statutes is, that whenever an execution shall be issued against the property of any person, his goods and chattels, situated within the jurisdiction of the officer to whom such execution shall be delivered, shall be bound only from the time of the delivery of the same to be executed. (2 R. S., 365, § 13.)

The goods and chattels of Remsen & Dingee, the defendants in the execution, were bound and subject to the same, on the 27th of August, 1856, and the lien of that execution, thus created, could only be defeated by the title of a purchaser in good faith, without notice of the execution. This court held, in the case of *Roth* v. *Wells*, decided at June Term, 1864, that the right of the sheriff to sell the goods of a judgment debtor within his bailiwick, at the time of the receipt of the execution by him, without any actual levy, remained perfect as against the judgment debtor, when no title of a *bona fide* purchase intervened, or was set up.

But it is also declared by the Revised Statutes, that the title of any purchaser in good faith, of any goods or chattels, acquired prior to the actual levy of any execution, without notice of such execution being issued, shall not be diverted by the fact that such execution had been delivered to an officer to be executed before such purchase was made. (2 R. S., 366, § 17.)

Assuming, therefore, as we may for the purpose of this discussion, that the plaintiff was a *bona fide* purchaser of the goods of Remsen & Dingee, and that such purchase was made without any notice of any execution having been. issued, it becomes essential to ascertain whether any actual levy of the execution issued had been made prior to such purchase. The facts in reference to such levy were uncontradicted, and therefore there was nothing to submit to the jury on that point. It was purely a question of law upon the conceded facts, whether or not such levy had been actually made. The officer testified that he made the levy, with the

49

execution in his hands, which he then exhibited to one of the defendants in the store, with the goods claimed to be levied on in full view; that he then declared such levy made, and made a memorandum thereof and of the goods levied on, in the presence of one of the defendants in the execution, and folded the same in the execution, and upon the promise and engagement of said defendant to permit the goods to remain as they were, the officer left them in the store and in his charge. Did these acts and declarations amount to an actual levy upon the 27th of August, 1856? I cannot have a doubt but they did, and the authorities abundantly sustain this position. Crocker on Sheriffs, § 425, says: A levy upon personal property is the act of taking possession of, attaching or seizing it, by the sheriff or other officer, under and by virtue of any execution he may hold against such property, whereby the lien of such execution upon such property becomes perfect, and the property is thereupon deemed to be in the custody of the law. We have seen that such property is to be deemed in the custody of the law and subject to the execution from the moment it is delivered to the officer, where no title of a *bona fide* purchase, or a purchaser without notice of an execution having been issued, intervenes or is set up. The doctrine to be deduced from the cases is, that no actual or valid levy upon personal property, against a *bona fide* purchaser, or a purchaser without notice of the execution, can prevail and defeat their title; unless such property is present and subject to the disposition and control of the officer seeking to make the levy. (*Haggerty* v. *Wilber*, 16 Johns., 287; *Beekman* v. *Lansing*, 3 Wend., 446; *Butler* v. *Maynard*, 11 Wend., 548; *Ray* v. *Harcourt*, 19 Wend., 495; *Barber* v. *Binninger*, 4 Kern., 270.)

In *Haggerty* v. *Wilber*, Chief Justice SPENCER said, in reference to the necessity of making an inventory upon a levy which was insisted on as necessary to its validity, that it was not necessary in all cases, for that it had been held that a seizure of part of the goods in a house, by virtue of a writ of *fieri facias*, in the name of the whole, is a good

seizure of all.   The inventory furnishes the means of ascertaining what goods were levied on.   It may be safely laid down that the sheriff must have the goods under his view and within his power, to constitute a good levy; a proclamation of a levy of goods locked up and not within view of the sheriff, is no levy.   In the case at bar, all the elements deemed essential to constitute an actual levy, are found.   An inventory of the goods levied on, was made at the time, although this is said not to be essential.   The goods were in full view of the officer, and they were within his power, as he could have removed them or placed a person in custody of them.   In addition he proclaimed his levy and exhibited the process under which he made it.

In *Beekman* v. *Lansing*, MARCY, J., cites with approbation *Haggerty* v. *Wilber*, and says it is not necessary that an assistant of the officer should be left in possession of the goods, or that the goods should be removed, they may be left in the custody of the defendant at the risk of the plaintiff or of the sheriff.   In *Butler* v. *Maynard*, Judge NELSON, in delivering the opinion of the court, observed that in view of the law as it stood before the Revised Statutes, and to determine the rights of all parties as far as the same can consistently be done, with those statutes, as well as to enable public officers to understand their duties, that the soundest construction to be given to them will be to hold that any levy which in law is valid as against the defendant in the execution and will justify a sale under it, will operate to defeat a subsequent purchase, though *bona fide* and for a valuable consideration.   As we have already seen, the *mere delivery* of the writ to the sheriff heretofore had that affect, now there must be an actual levy, but the statute uses this term as known and understood in the case, and means such a levy as is required before the property can be sold.

In *Ray* v. *Harcourt*, NELSON, Ch. J., referring to these authorities says, what constitutes a levy according to the practice in this State, has been very well settled, and is not now open to dispute.   The officer must take actual possession, and for this purpose the goods should be within his

view, and subject to his disposition and control. It is not necessary that he should remove them, or leave an assistant in possession, they may be left with the defendent. But this court has definitely settled what acts and declarations are sufficient to constitute an actual and valid levy. In *Barker* v. *Binninger*, the head note to that case is, a manual interference with chattels is not requisite to constitute a valid levy thereon. It is sufficient that the property is present, and subject to the control of the officer having the execution, and that he there openly states that he levies upon and asserts authority over it by virtue thereof. In that case the deputy sheriff went with the defendant in the execution, to a stable, where the horse claimed to be levied on was, that when they had gone into the stable, the horse, being there within his view, he informed the defendant that he had the execution against him, and that he then levied on the horse by virtue of the execution, and that he must not move him, and that on his return to his office the next day, he made a formal memorandum of the levy.

It is entirely clear, therefore, that the levy in the present case, fully comes up to all the requirements of the laws, and was valid and effectual to subject the property levied on to the lien created thereby. The plaintiff, therefore, assuming that he was a *bona fide* purchaser of the goods, and without any notice of any execution having been issued, cannot set up his title, to defeat such lien. The court properly decided that an actual levy had been proven, and that the defendant was entitled to recover the property levied on. There was no pretense or proof to sustain the assumption that there had been an abandonment of the levy. The sheriff was stayed in his proceedings on the execution and the levy made thereunder, by an order of a judge of the Supreme Court, and as soon as that order was vacated, he resumed his control and dominion over the property levied on. If the jury had found that there had been an abandonment of the levy, it would not have been supported by any proof on the trial, and could not have been sustained. It was no error, therefore, in the judge, in refusing to submit that question to the jury. It

was wholly immaterial, if an actual levy was established, whether or not the plaintiff had notice of the issuing of the execution before he made his purchase.

If no levy had been made out then, the defendant, successfully to defeat the purchase of the plaintiff, must either have shown that the purchase was not *bona fide*, or that it was made with notice of the issuing of the execution. In this respect only did the inquiry become at all material, whether or not the plaintiff had notice of the execution. The plaintiff, therefore, an actual levy having been proven, would not have been at all benefited by the finding of the jury, that he made his purchase, without notice of the issuing of an execution. The judge, therefore, properly declined to submit that question to the jury. The judgment appealed from should be affirmed.

All concurring,

Judgment affirmed.