CALVIN L. HATHAWAY, Appellant, *v.* EDWIN W. HOWELL, Respondent.

An execution against property gives the sheriff authority and power over the debtor's goods and chattels, but vests him with no right or title thereto or interest therein until a levy is made; they are bound by the execution from the time of its delivery for the benefit of the execution creditor, so as to secure to him a lien thereon; for the enforcement and satisfaction of this lien, however, it is necessary that the officer make an actual levy and sale, and such levy must be made during the life of the execution; no constructive levy can arise or be presumed from the mere fact of the delivery of the execution.

The mere delivery of an execution to a sheriff, without any levy by virtue thereof during its life, does not justify him in seizing the debtor's goods

after the return day; the writ then ceases to be of any force, and all rights of the sheriff under it are at an end.

Two statements for judgments by confession against S., with judgments indorsed thereon, were filed in the county clerk's office, on the twenty-sixth day of May (Saturday), at eight P. M. Executions thereon were at the same time delivered to defendant, as sheriff, who, during the same evening, assumed to levy on certain chattels of S., taking the steps requisite to constitute a valid levy, but did not remove the property. At ten P. M., of the same evening, S. executed to plaintiff a chattel mortgage on the same property, which was handed to the clerk (out of his office), to be filed, who indorsed the same as filed May twenty-sixth, at ten P. M., but did not take it to his office until Monday, May twenty-eighth, at nine A. M. The mortgage was given to secure an antecedent debt. Defendant, afterward and before the return day of the executions, advertised the property but did not sell, and did not interfere with the same after the attempted levy, but claimed to hold it by virtue of the executions. After the return day plaintiff demanded the property, but defendant refused to deliver or to relinquish his claim. In an action to recover possession, *Held*, that the judgments and executions did not become operative or of any legal effect until the twenty-eighth of May, at eight A. M., as the filing of the confessions and the proceedings upon the previous Saturday evening, when, by law, the county clerk's office was not open for business, were ineffectual to constitute valid judgments, and that the attempted levy by defendant, on Saturday did, not vest him with any interest or give him any right of control over the property; that plaintiff's mortgage was void as against the plaintiffs in said executions, as it was not filed when the lien of the executions attached; but that defendant, by his omission to make an actual levy during the life of the executions, lost all right to interfere with or exercise any control over the property after the return day, and that his refusal to relinquish his dominion over it to the plaintiff, on demand, made him liable. The executions being a nullity when issued, as to whether the subsequent filing of the judgment records validated them, *quere* (REYNOLDS, C.).

The cases of *Roth* v. *Wells* (29 N. Y., 471); *Bond* v. *Willett* (29 How, 47; S. C., 31 N. Y., 102), and *Lambert* v. *Paulding* (18 J. R., 311) distinguished and limited.

(Argued March 8, 1873; decided June term, 1873.)

APPEAL from a judgment of the General Term of the Supreme Court, in the sixth judicial district, affirming a judgment in favor of defendant, entered on the report of a referee.

This action was brought to recover the possession of a

quantity of household furniture and other personal property, of the value of $10,000. The property, on the 26th of May, 1866, belonged to one Christopher Slater. The plaintiff makes title to it by virtue of a chattel mortgage, executed by Slater to the plaintiff, on that day, to secure the payment of a pre-existing debt of $12,000, due from Slater to him. On the next day the said Slater executed to the said plaintiff a second mortgage upon a portion of the same property, to secure the payment of $1,000 of the same debt, and collateral to the other mortgage. The defendant Howell was, at that time, the sheriff of Chemung county, and he claimed to hold the property by virtue of two executions, issued upon judgments, against the said Slater. Slater confessed the said judgments on the 26th day of May, 1866, at eight o'clock in the evening, and the clerk of the said county filed the statement of the confessions, with a judgment thereon indorsed on them respectively, at that hour. Executions on the said judgments were delivered to the defendant, as such sheriff, about the same hour, and he, afterward, and during the same evening, went to the Hathaway house, in the city of Elmira, in said county, then occupied by the said Slater, and where the property mentioned in the complaint was, and assumed to levy the said executions upon the said property and did all that was requisite to constitute a levy of a valid execution, but did not remove the property, nor was there any manual interference therewith by him. He afterward advertised the property for sale by virtue of the executions and before the return day thereof, but did not sell the same.

The plaintiff's chattel mortgage, first given, was executed at ten o'clock in the evening of the 26th of May, 1866, and was at that hour handed by the plaintiff to the said clerk, to be filed, but he was not at the time in his office. The clerk then and there indorsed the said mortgage as filed May 26, 1866, at ten P. M., but did not take the same to the office of the county clerk until the next Monday, May 28th, at nine o'clock in the morning, when he deposited the same, thus

indorsed, in the appropriate place in said office. The second mortgage was filed in said office on the same day, at three P. M. Slater resided, and the property referred to was in his possession, at the city of Elmira, in the county of Chemung, where the county clerk's office was also situated. On the 6th of August, 1866, the defendant had not sold the property, but claimed dominion over it and to hold it by virtue of the executions, and on that day the plaintiff, holding the said mortgages unpaid, demanded the possession of the property from him, He refused to comply with the demand or to relinquish his dominion over it.

The referee who tried the action held the levy made on the evening of May 26th absolutely void and a nullity, but decided that, as against the plaintiff, the sheriff, by reason of the lien of the executions upon the property becoming effectual from eight o'clock on the 28th of May, 1866, although no levy was then or subsequently made, had the right to seize, hold and sell the property after the return day of the executions, on the ground that such lien operated "as a constructive levy thereof on the property without the aid of any previous levy."

*Charles Mason* for the appellant. Defendant could not be divested of the property until the sheriff had made an actual levy. (*Payne* v. *Drew,* 4 East, 523–539, 540; *Samuel* v. *Duke,* 2 Mees. & W., 62; 1 Ld. Raym., 252; 10 Viner, 566; 2 Eq. Cas. Abr., 381; Tidd's Pr., 915; *Vail* v. *Lewis,* 4 J. R., 450; 452.) A sheriff has no such lien or property in goods before he has actually levied, that he can maintain trover against one who converts the goods. (*Hotchkiss* v. *McVicker,* 12 J. R., 403; *Marsh* v. *Lawrence,* 4 Cow., 468; 7 id., 461–468; *Dillenback* v. *Jerome,* 293, 297.) The sheriff has no authority to levy after the return day of the execution. (*Vail* v. *Lewis,* 4 J. R., 45; *Devoe* v. *Elliot,* 2 Caine's, 243; *Harvey* v. *Broad,* 6 Mod., 148, 159, 196; 8 id., 225; 2 Tidd's Pr., 1072; 10 Viner Ex. A., a 568; *Maud* v. *Barnard,* T. J. Burr R., 812; 3 Mass., 20; *McElwel* v. *Sutton,* 2

Bailey, 361; *Gaines* v. *Clarke*, 1 Bibb., 608; *Frierson* v. *Anderson*, 14 L. R., 158; *Slingerland* v. *Swart*, 13 J. R., 255, 257; *Van Rensselaer* v. *Kidd*, 2 Seld., 333; *Prescott* v. *Wright*, 6 Mass., 20; 3 Bacon's Abr., 688; Bouv. ed., title C., 1; *Stevens* v. *Boswell*, 2 J. J. Marsh, 30.) The executions, under which the sheriff attempted to levy, were void, because the judgment records were not filed until after office hours on Saturday night, and the judgments were not actually docketed until Monday. (S. L. 1860, 480; Sup. Ct., Rule 9; *Marvin* v. *Herrick*, 5 Wend., 109; *Wardell* v. *Mason*, 10 id., 573; *Clute* v. *Clute*, 4 Den., 243.) Defendant is obliged to show a valid judgment as well as execution. (*Dunlop* v. *Hunting*, 2 Den., 643; *Earl* v. *Camp*, 16 Wend., 562; *Horton* v. *Hendesshot*, 1 Hill, 118.)

*S. B. Tomlinson* for the respondent. The statements in both judgments are sufficient. (20 N. Y., 447; 22 id., 419; 24 id., 325; 27 id., 300; 28 id., 285; 30 id., 429; 31 id., 417.) The judgments in question became operative and valid at eight o'clock A. M., on Monday, the hour for opening the office. (4 Den., 241; 7 How. Pr., 229; 26 id., 180.) It is enough to render the executions valid that the records or rolls were signed and filed. (2 R. S., 360, § 11; 5 Wend., 109; 20 J. R., 309.) The executions having become effectual at eight A. M., on Monday, May twenty-eighth, the goods of the debtor were bound from that time without any actual levy, except as against the intervening title of a *bona fide* purchaser. (2 R. S., 366, §§ 13, 17; *Hale* v. *Sweet*, 40 N. Y., 97; *Ray* v. *Birdseye*, 5 Den., 619; *Roth* v. *Wells*, 29 N. Y., 471; *Bond* v. *Willett*, 29 How. Pr., 47.) Plaintiff was not a *bona fide* purchaser. (17 Barb., 446; 37 id., 571; 5 Den., 619.) Plaintiff, as against the sheriff, was bound to establish on the trial that his mortgages were duly filed before the delivery of the executions to the sheriff. (3 R. S. [5th ed.], 222, § 9.) The indorsement of receiving the mortgage is merely a memorandum of filing, and is not the filing itself. (*Bishop* v. *Cook*, 13 Barb., 326; 3 R. S. [5th ed.], 223, § 9.)

The mortgages not being accompanied by an immediate delivery of the property, will be presumed to be fraudulent and void as against creditors of the mortgagor. (3 R. S. [5th ed.], 222, § 5.) To show good faith there must be evidence *dehors* the mortgages that they were given for a valuable consideration and to secure an honest debt. (*Hanford* v. *Archer*, 4 Hill, 271; *Baskin* v. *Shannon*, 3 N. Y., 310.) The sheriff had a right to sell the property during the life of the executions. (*Lambert* v. *Paulding*, 19 J. R., 311; *Ray* v. *Birdseye*, 5 Den., 619; *Roth* v. *Wells*, 29 N. Y., 417; *Williams* v. *Shelley*, 37 id., 375; *Bond* v. *Willett*, 29 How. Pr., 47; *Hale* v. *Sweet*, 40 N. Y., 97.)

LOTT, Ch. C. It is clear, from the facts found by the referee, that the judgments and executions under which the defendant claimed and exercised dominion over the property in question, when the plaintiff demanded it of him, did not become operative or of any legal effect until eight o'clock on the morning of the 28th of May, 1866. The filing of the confessions of judgment, and the action thereon at eight o'clock of the previous Saturday evening, in the county clerk's office, when by law it was not open for the transaction of business, were ineffectual to constitute valid judgments. Hence, the delivery of the executions to the defendant, and what was done by him for the purpose of making a levy under them that evening, did not vest him with any interest in the property, nor give him any right to, or control whatever over it at that time. Such delivery, however, became effectual at eight o'clock of the following Monday morning, the hour designated by statute for opening the county clerk's office, and the property became bound from that time by the executions, and continued subject to them until the return day thereof.

It is also clear that the plaintiff's mortgages were void as against the plaintiff in the said execuions. They had neither of them been filed in the proper office when the lien of the executions attached, and were, consequently, subordinate and

subject thereto.   The fact that the mortgage first given was handed by the plaintiff to the county clerk while absent from his office, to be filed therein at ten o'clock of the said Saturday evening, and that he, during such absence, marked and indorsed it as filed at that hour, is immaterial.   He did not, in fact, take it to or deposit it in the office until nine o'clock in the forenoon of the following Monday.   It in reality was not filed, and, consequently, did not become effective as against creditors before that time.

The above propositions are not disputed by the appellant's counsel, but he claims that by the failure or omission of the defendant to make an actual levy during the life-time of the executions, he lost all right to interfere with, or in any manner exercise or control a dominion over the property in question after their return day.   This is really the only material question presented on this appeal.

The referee appears to concede the necessity of a levy to justify and protect the defendant, but he decided, as a conclusion of law, that the lien of the execution continued up to the time of the commencement of this action, and " *operated as a constructive levy* thereof on the property, and continued after the return day thereof, without the aid of any previous levy, and that the defendant had the right, after the expiration of the sixty days from the time the executions became effectual in his hands, to seize, hold and sell the said property upon said executions, by virtue of such constructive levy, although he had not made any actual levy before the expiration of such time."   It appears, by the opinion given by him, that this conclusion was reached against his own views and conviction of what the rule of law on the question was, but he felt bound by the authority of the case of *Roth* v. *Wells* (29 N. Y., 489), and which he deemed to be applicable to this, and he says that not considering himself " at liberty to disregard " that authority, he was led to the conclusion " that the defendant had, by virtue of the executions at the time of the commencement of this action, a right to the possession of the property superior to that of the plaintiff, and that the latter

must fail in this action." The Supreme Court, as stated by BALCOM, P. J., in his opinion given on the affirmance of the judgment, decided against the proposition or claim of the plaintiff's counsel that an actual levy was necessary, on the ground that it was *res judicata* under the decisions and opinions of the Court of Appeals in the case above cited, and in *Bond* v. *Willett* (29 How. Pr. Rep., 47; S. C., 31 N. Y. Rep., 102). He said that those decisions and opinions were "too strongly" against the proposition to admit a decision in favor of it, and concluded by saying, "It is possible that the Court of Appeals may hold that this precise question was not necessarily determined in the above cases, but it would hardly be respectful for this court so to decide," and, thereupon, without any consideration of the subject, the judgment on the decision of the referee was affirmed.

A careful examination of those cases shows that the question was not involved in either of them.

That of *Roth* v. *Wells* was an action by the plaintiffs therein, to recover the value of certain goods sold by the defendant's testator, as sheriff of the county of Rensselaer, and which he claimed he had a right to sell under four executions issued to him on judgments recovered against them.

The statement of the case shows that the grounds on which the plaintiffs sought to recover were:

1. That the defendant never made or attempted to make a levy on the property which he subsequently sold.

2. That the levy, if there was one, was not valid so as to entitle the sheriff to sell said property.

3. That the executions were paid, the plaintiffs having delivered to the sheriff their check secured by indorsed notes as collateral, which the sheriff accepted in payment of the said executions.

4. That the sheriff seized and sold, by virtue of said executions, a large quantity of goods which had been purchased after the time when the defendant claimed to have made a levy on the plaintiff's property.

Evidence was given on the trial, for the purpose of prov-

ing and tending to prove that a valid levy was made on the 24th day of August, 1857, on certain goods of the plaintiffs then in their store, that other goods were afterward purchased and taken into the store, and that those subsequently removed therefrom · and sold by the sheriff were taken without regard to the fact whether they were originally levied on or not.

The court charged the jury that if a sufficient levy was made on the twenty-fourth of August, and the executions remained in force when the goods were taken, " they might regard the levy as continued and covering the goods purchased subsequent to the levy and during the life of the executions, such goods being in the same place, of the same general description as those levied upon, and being purchased to supply the place of goods sold by the debtor after the levy, or making additions to the stock." There was an exception by the plaintiff's counsel to this charge, and he then requested the court to charge the jury " that if the levy was valid, yet the defendant was a trespasser for taking the goods purchased subsequent to the date of the levy," which was refused. The court had also, previous to the charge above set forth, refused to instruct the jury " that the acts done by the sheriff on the twenty-fourth of August did not constitute a valid levy on the goods in the store." Both of those refusals were excepted to, and the above mentioned exceptions were the only ones taken on the subject of the levy.

The case, as decided in the Supreme Court, is reported in 41 Barb. S. C. R., 195, and it does not appear from the statement of facts and questions raised on the trial, as there made, that any other instruction was given, or that any other exception was taken on the question of the levy, than those already set forth. It is also stated that the goods were taken from the store on the 18th day of November, 1857, and that a portion only of them were in it at the time of the alleged levy.

It thus appears from the report of the case in both courts, that the questions raised on the trial on the subject of a levy and the sheriff's authority to take the property after the return day of the executions were: 1st. Whether any levy

was in fact made; and, 2d. If there was, whether it *covered* and could be held to *include* the goods brought into the store *subsequent thereto* and before the return day of the executions, without any action of the sheriff in the meantime. There is nothing to indicate or from which it can be inferred that it was claimed on behalf of the sheriff, that the mere delivery thereof to him, without anything whatever done to constitute a levy during the time limited to enforce them, could afterward give him the right to take the goods and remove them and there is certainly nothing to show that the judge so instructed the jury, or gave them any instruction from which they could infer that he meant to be so understood.

Judge MULLIN in one of the opinions given in the Court of Appeals, sustains the ruling of the judge as to the goods purchased after the levy, by construing it to be an instruction to the jury that they became liable to the levy because the plaintiffs had voluntarily mingled them with those that had been levied on and had neglected, after request, to designate on which such levy had been made. Although Judge SELDEN in the opinion delivered by him, said that he " was of the opinion that no actual levy was necessary to justify the defendant in seizing and selling the goods after the return day of the executions," and that the lien created by the delivery of the executions, being for the benefit and security of the plaintiffs, could not be defeated or lost by the neglect to make a levy before that time, but might be afterward enforced by him " without such prior levy," he concludes, after remarks intended to sustain these views, with the following statement: " but whether the foregoing views are correct or not, the charge upon the point in question may be sustained on the ground that there was a confusion of goods, produced by the acts of the plaintiffs, which rendered it difficult, if not impossible, for the sheriff to distinguish between those levied upon and those which had been subsequently introduced. The plaintiffs refused to separate them and upon well established principles, the sheriff was justified in taking the whole." No other opinions in that court are

reported, and all the judges concurred in affirming the judg
ment entered on the verdict in favor of the plaintiffs. We
must, therefore, conclude in view of the charge at the circuit
and the opinion of Judge MULLIN and Judge SELDEN's
remarks last referred to and above cited, that the decision of
the court was placed on the ground that all the goods for
which the recovery was had, were to be considered and
treated, for the reasons stated, as *covered* by the *levy actually
made* on some of them during the life of the executions and
do not sustain the proposition that they could be enforced
after the return day without a previous levy.

The case of *Bond* v. *Willett* (*supra*), referred to by the
Supreme Court, only presented the question whether the acts
relied on, as constituting an actual levy by the sheriff of New
York on the goods for the recovery of which the action was
brought, were sufficient for that purpose. It is true that
Judge DAVIES in his opinion given in affirmance of the judg
ment of the Supreme Court, as reported in 27 Howard's Pr.
Rep., 47, said, among other things, " that at the common
law no levy upon personal property was necessary," and that
the Court of Appeals had held in *Roth* v. *Wells* (*supra*), " that
the right of the sheriff to sell the goods of the judgment
debtor within his bailiwick at the time of the receipt of the
execution by him, without any actual levy remained perfect
as against the judgment debtor, when no title of a *bona fide*
purchaser intervened or was set up ;" but a reference to the
facts appearing in the case, show that those remarks were
uncalled for by them and wholly *obiter dicta*. He, himself,
after making his statement of some of them said, " on the
trial the plaintiff's counsel claimed that there had been no
actual levy and that even if there had been, it had been
abandoned. The court decided as matter of law, that there
had been an actual levy." He then said further, " the facts
in reference to such levy were uncontradicted " and that " it
was purely a question of law upon the conceded facts,
whether or not such levy had been actually made," and after
referring to what the officer had done and said in connection

with his acts, asked " did these acts and declarations amount to an actual levy upon the 27th of August, 1856 ?" and answered the question by saying, " I cannot have a doubt but they did, and the authorities abundantly sustain this position ;" and after citing several authorities, concluded as follows : " It is entirely clear, therefore, that the levy in the present case, fully came up to all the requirements of the law and was valid and effectual to subject the property levied on to the lien created thereby." That case is clearly not an authority to warrant or sustain the decision of the referee or the Supreme Court in this.

Having thus reached the conclusion that the question presented for our adjudication was not determined by the above cases, and that it is not to be considered as *res adjudicata* by the decisions therein, it must be examined as an open one in this court. To do this it will be proper to look at the requirements of an execution and its effect. If it is against the property of the judgment debtor, it requires the officer to satisfy the judgment out of his personal property, and if sufficient personal property cannot be found, out of his real property, and it is made returnable within sixty days after its receipt by the officer, to the clerk with whom the record of judgment is filed. (Code, § 289.) It will be seen that it gives the officer *authority* and *power over* such property, but vests him with no right or title thereto or interest therein. From the time of its delivery to him, the goods and chattels of the debtor become bound thereby, and it is declared, by statute, that " if there be several executions issued out of a court of record against the same defendant, that which shall have been first delivered to an officer to be executed, shall have a preference, notwithstanding a levy may be first made under another execution ; but if a levy and sale of any goods and chattels shall have been made under such other execution, before an actual levy under the execution first delivered, such goods and chattels shall not be levied upon or sold by virtue of such first execution   *   * ; but any execution or attachment issued out of any court, not being a court of record, if actually

levied, shall have preference over any other execution issued out of any court, whether of record or not, which shall have not been previously levied." (2 R. S., p. 366, §§ 14 and 16.) It is evident, from the above provisions, that such goods and chattels are "bound" by the execution, from the time of its delivery, *for the benefit of the execution creditor*, so as to secure to him a lien thereon, and that it is necessary that the officer, for the purpose of enforcing it and obtaining satisfaction thereof, shall make an actual levy and sale, and that no "constructive levy" can arise or be presumed from the mere fact of the delivery of the execution to him, without any act or proceeding by him under it, before the return day thereof, to take the possession of the property or for the purpose of exercising a dominion or control over it. Without such possession or control he cannot make the execution effectual in producing means to satisfy the lien. It is requisite that he should be able to expose the goods and chattels to view when they are offered for sale and on the sale of them to deliver them to the purchaser or purchasers.

It is a general principle that all process must be served on or before the return day, and, applying that principle to this case, the defendant could not make a levy after the execution was returnable. It has been held, and it may be conceded to be the law, that where a sheriff has levied a *fi. fa.* in due time, he may make a *sale* under the levy afterward, but this is merely in continuance and completion of that levy partly executed.

The right of a sheriff under an execution, before a levy under it, was very fully considered by SPENCER, J., in *Hotchkiss, sheriff, etc.*, v. *Mc Vickar* (12 J. R., 403), the headnote of which briefly states the point decided therein, in the following terms: "A sheriff cannot maintain trover for goods tortiously taken out of the possession of the party against whom the execution issued after the *teste* but before the delivery of the execution to and a seizure by him. The statute of frauds, by which the goods of the debtor are bound from the delivery of the writ of execution to the sheriff, does not alter

the property of the goods, but before and since the statute, the property in the goods continues in the defendant." In that case McVickar, the defendant, on the day previous to the delivery of an execution to the plaintiff, as sheriff, in favor of John P. Beekman against Garret Claw, took a fishing net belonging to Claw, and without his consent, from the place where it had been left by him. The defendant had, in fact, applied to Claw to let him have the net, which he refused, observing that he had given a judgment bond to Beekman. A deputy of the sheriff, after the receipt of the execution, demanded the net of the defendant, by virtue of the execution against Claw. The defendant admitted that he had taken it, but refused to deliver it to the deputy, and, thereupon, an action of trover was commenced against him by the sheriff. Judge SPENCER, in giving his opinion, after referring to the statute in relation to executions then in force, of which the present is substantially a transcript, so far as it relates to the question involved in this action, stated that the goods in question were "bound by the execution in the plaintiff's hands at the time the defendant took them away." He then said: "The only remaining inquiry is this: Can the plaintiff, who never levied on the goods, maintain an action for the conversion of them, when they were, in fact, taken tortiously by the defendant before the plaintiff received the execution on the ground that they were bound by the execution in consequence of the *teste* being prior to the defendant's taking them." In considering that question, he said, that it had been repeatedly held, that neither before nor since the statute, the words "bound from the delivery of the writ of the sheriff," alter the property of the goods, but it continues in the defendant, until the execution is executed. He then, after stating that if the goods were rescued the sheriff might return that fact and he would not be held liable, says: "This shows that the property did not vest in him. Indeed, the execution creates the lien for the benefit of the creditor, and the sheriff is the mere minister of the law to procure for the creditor satisfaction of the debt; and to this end the sheriff

is invested with the right, after he has found the property
and levied on it, to hold possession until a sale ; and if that
possession is violated, he may maintain trespass or trover,"
adding, " it has been uniformly held in this court that an
*actual* levy of a *fi. fa.* was necessary." He concludes the
opinion in the following terms : " On the principle, therefore,
that a levy was necessary to constitute a special property in
the plaintiff in the goods, and that no levy has ever been
made, the defendant is entitled to judgment." The same
principle precluded the defendant in this case from interpos-
ing any rightful claim to or control over the property in
question ; and his refusal to relinquish his dominion over it to
the plaintiff on demand, made him liable as a wrong-doer.
Judge SELDEN, in his opinion to which I have referred, after
remarking that there is nothing inconsistent with his position
in the case of *Hotchkiss* v. *Mc Vickar*, says : " If there be,
that case cannot be reconciled with the later decision in
*Lambert* v. *Paulding* (18 John., 311) ;" and he greatly relies
upon that decision to sustain his own opinion. It will be
necessary to see what was decided by that case. It appears
by the statement of facts therein that after a *fi. fa.* in favor
of the plaintiff against the defendant had been delivered to
the sheriff of the city and county of New York with direc-
tions to levy it on a sloop belonging to the defendant, then
lying at that city, she was, before a levy on her had been in
fact made, removed by him to Tarrytown, in the county of
Westchester, and the sheriff of that county there seized and
sold her under a *test. fi. fa.* delivered to him on a judgment
in a suit against the same defendant in favor of W. Paulding,
another plaintiff, and whose attorney, at the time of issuing
the last writ, was informed of the execution in the hands of
the sheriff of New York. The money arising from the sale
was retained in the hands of the sheriff of Westchester county
by an order of the recorder of New York until an applica-
tion could be made to the Supreme Court, from which both
executions had been issued, for an order directing its pay-
ment to the plaintiffs in the first execution. It was claimed

and urged by Mr. Caines, in support of the motion, that the vessel, at the time of her sale, was subject to a *lien* in favor of the plaintiffs in the first execution created by its delivery to the sheriff. of New York, which had not been divested by her removal to Westchester county and the levy on her there; that while the entire property passed to the purchaser, the proceeds of sale were subject to the said lien, and were to be applied to the satisfaction of it before any portion of them could be paid on account of the second execution. The motion was granted and the court said that "the delivery of the *fi. fa.* in the suit of Lambert and others against the defendant to the sheriff of the city and county of New York, bound the goods of the defendant then in his bailiwick; and the plaintiffs, in that execution, cannot be deprived of the lien on the sloop, which was then lying in New York, by the act of the defendant in removing the vessel into another county." It is added " he would be liable to an action at the suit of the sheriff for so removing the property." It will be seen that the *ground* of the decision was that the plaintiffs in the first execution had acquired a *lien* on the vessel by its delivery to the sheriff of New York, which was not divested by her removal to Westchester county; and the subsequent single remark that the defendant would, for that act, be liable to an action at the suit of the said sheriff (apparently incidental merely), cannot be considered an adjudication on the question overruling a deliberate decision previously made in *Hotchkiss* v. *McVickar*, without any reference to it in the opinion. The question was not involved in the motion, and certainly not necessary to its decision.

We have been referred to no other authority to sustain the proposition which we have been considering. The views above expressed show that a levy of an execution is necessary to justify the enforcement by the sheriff of a lien created thereby; and I will conclude by a reference to the following authorities to show that such levy must be made during the life of the execution, and cannot be made after the return day has passed: *Devoe* v. *Elliott* (2 Caines, 242); *Vail* v.

*Lewis* (4 J. R., 456); *Slingerland* v. *Swart* (13 id., 255); *Van Rensselaer* v. *Kidd* (2 Seld., 255).

It follows, from the views above expressed, that the judgment should be reversed and a new trial ordered, costs to abide the event.

REYNOLDS, C. In order to sustain the judgment in this case, we are asked to decide that an attorney may place an execution against the property of a debtor, in the hands of a sheriff before a judgment is entered according to the statute, in the proper public office, and that the execution will become valid process if a judgment shall thereafter be duly filed and docketed. It was held by the Supreme Court, that the execution issued and levy made on the evening of the 26th of May, 1868, were void, but that the judgment record having been found in the proper clerk's office on the following Monday morning (the 28th) at eight o'clock, was thereby made valid. There is no question but that the execution when issued and placed in the hands of the sheriff on the 26th of May, was a nullity and the levy made on the evening of that day void. What effect the subsequent filing of the judgment record had upon the execution, is a question in respect to which there might be a difference of opinion, and the view we take of the case, renders it unnecessary to consider it.

If it should be assumed that the execution of the twenty-sixth of May, was in full vitality on the morning of the twenty-eighth at eight o'clock, it is not claimed that any valid levy was made under it during the sixty days it had to run. I do not understand the law to be, that by the delivery of an execution to a sheriff, the legal title of the defendant is *per se* divested, and thereafter resides with the sheriff. That result is not produced without an actual and legal levy. If no levy has been made under a prior execution during its life, a levy and sale under a subsequent execution takes the proceeds of the property. The sheriff cannot maintain trover against a wrong-doer who takes the property before actual.

levy. Nor can he levy after the return day of the execution, if he does this he is a trespasser. (*Van Rensselaer* v. *Kidd*, 6 N. Y, 333; *Vail* v. *Lewis*, 4 Johnson, 450; *Devoe* v. *Elliott*, 2 Caines, 243.) It is quite true that if a valid levy is made during the life of the execution, a sale may be made afterward. Such is the rule approved in many adjudged cases, and especially in the recent cases of *Roth* v. *Wells* (29 N. Y., 471); *Bond* v. *Willett* (29 How. Pr., 47); S. C., 31 N. Y., 102), where it was held that the sheriff had made a legal levy before the return day of the execution, which had not been released or abandoned. There was nothing in either case to require or justify a decision that the sheriff might make a levy after the return day of the execution. I consider the law well settled that after the return day of an execution without any previous levy, the writ ceases to be of any force and all rights of the sheriff under it, are at an end.

If these views are correct, the case was undefended and the plaintiff entitled to recover. To enable him to do so, there must be a new trial with costs to abide the event.

All concur; GRAY, C., not sitting.

Judgment reversed.