MALTBY G. LANE, Appellant, v STEPHEN LUTZ, FRANCIS DOLL, JOHN GERMANN, ANTHONY LAMBRECHT, and MERWIN R. BREWER, Respondents.

In an equitable proceeding, the court will not direct the receiver to sell property without first giving a party claiming title thereto, a hearing.

As affecting the rights of parties, it is not essential that a chattel mortgage should have been on file at the commencement of an action in which the existence of the mortgage is recognized.

The statute declaring that a chattel mortgage shall be absolutely void as against the creditors of the mortgagor, when the property is left in his possession, unless filed, does not include creditors at large.

The creditor must have attached the mortgaged property and have acquired a lien upon it in some legal way before the question can be raised.

THIS action, in the nature of a creditor's bill, was brought by plaintiff, as assignee of a judgment obtained by David Lane, James G. Carpenter, and Henry W. Miller, against Lutz, Doll & Germann, upon the return of an execution unsatisfied, to set aside a sale made by them in May, 1854, of the "Manhattanville line" of stages, horses, etc., to the defendant, Lambrecht; and also to set aside an assignment, made at the same time, by Lutz, Doll, and Germann, to Brewer.

Husson was not a party to the suit, but held a chattel mortgage on the property sold to Lambrecht, which mortgage is mentioned in the complaint and its validity is nowhere questioned by the pleadings.

The case was tried in April, 1855, before Judge MITCHELL, in the first district, who decided and adjudged the sale and assignment void, and directed the appointment of a receiver, to sell the whole property "*subject to the same incumbrances to which it was liable when Lambrecht took it.*"

The principal of these incumbrances were chattel mortgages, of which Joseph Husson, the respondent in this appeal, was assignee, from Benjamin Moore, to whom they were originally given. Moore originally owned the stage line and the property connected with it, and as early as 1852 sold the same to

Lutz, Doll & Germann, from whom he took a chattel mortgage thereon, to secure $11,000 a part of the purchase-money. In February, 1853, a portion of the mortgage having been paid, a new mortgage for the balance of $8,600 was executed by Lutz, Doll & Germann, to Moore, leaving the first mortgage uncanceled, and reciting that it covered a part of the amount due thereon. This mortgage was filed March 23d, 1853, having been previously, on the 19th day of the same month, assigned by Moore to Husson the respondent.

In February, 1854, a further assignment having been made, a new mortgage for the balance, $6,200, was given by Lutz, Doll & Germann, to Husson, leaving the previous mortgage uncanceled, and reciting that it covered a part of the amount due thereon. This mortgage was not filed till the 25th day of January 1855, after the commencement of this action, which was on the 20th day of October 1854. The sale by Lutz, Doll & Germann, to Lambrecht, which it was the object, in part, of this suit to set aside, was made on the 31st of May 1854, and was in terms subject to the chattel mortgage last mentioned, which was assigned by Lambrecht, and on which he made some payments, and on the 23d of February, 1855 he gave a new mortgage to Husson for $3,800, the balance remaining due on the previous mortgage. This last mortgage was filed on the day of its date, February 23d 1855, but several months after the commencement of this action.

The plaintiff's debt against Lutz, Doll & Germann, accrued in 1853 and 1854, while the latter were owing the chattel mortgages in question, of which the plaintiff had notice—constructive notice of, and by its having been filed and actual notice of both, in April and May, 1854, three months before they obtained the judgment by confession against Lutz, Doll & Germann, which operated as the foundation of this action. That judgment was confessed August 17th, 1854.; execution was issued and returned unsatisfied thereon on the same day. It is probable the plaintiff was not informed, until after the commencement of this action, of the fact that Husson's mortgage was not filed.

On the 11th day of October, 1854, David Lane & Co., assigned the judgment to plaintiff.

On the 14th October, 1854, plaintiff commenced this action, "to set aside the sale of the stage line and the property belonging thereto, and that the deed of said lots above described, and said assignment, be set aside, and the whole of said property belonging to said stage line, as well as said six lots and buildings thereon, or so much thereof as shall be necessary, be applied on the payment of the plaintiff's said judgment."

(The complaint admits the existence of Husson's chattel mortgage. No fraud is alleged respecting it, and Husson is not made a party.)

The suit was tried before Judge MITCHELL at Special Term, who decided, April 21, 1855, the sale and assignment void, and directed the appointment of a receiver "to sell the whole property, subject to the same incumbrances to which it was liable when Lambrecht took it."

Plaintiff never appealed from this finding, or attempted to alter or modify it.

A receiver was appointed April 25, 1855, who advertised and sold the property, May 5, 1855, and subsequent days. The handbills of sale prepared by the receiver and plaintiff's attorney, say: "If sold together, the present property will be sold subject to two chattel mortgages, but if sold in parcels it will be free from incumbrances." Husson's mortgage being one of them.

An attempt was twice made to sell in bulk on the 5th of May, but no bids being made, it was sold in parcels, under the understanding and agreement on the part of the plaintiff and Husson, that his mortgage should be first paid from the proceeds of sale. This was Husson's first connection with this suit.

Previous to the sale by the receiver, both plaintiff and his brother David Lane saw the mortgages in Husson's office, and David (who was one of the plaintiffs in the original suit, and who is charged to be the real plaintiff in interest in this suit) offered to pay Husson an installment of $200, then due

and owing by Lambrecht, to prevent a foreclosure of his chattel mortgage.

The property was sold in parcels, and notwithstanding the understanding and agreement made by plaintiff with Husson, the funds were brought into court by the receiver.

By this agreement made with the plaintiff, previous to the sale, Husson permitted the sale to be made free from his mortgage, and the articles to be separated, expecting to be first paid.

An order was entered, October 23, 1855, referring the accounts of the receiver to a referee for examination, to take proof of and pay the liens, if any; upon this order, served upon Husson, he was brought in to prove his claim, but was never otherwise made a party thereto.

The funds in receiver's hands proving insufficient to pay the liens, a question is now raised by the plaintiff that Husson's mortgage not having been filed, it is void as against him and that he, and not Husson, is entitled to the fund in court.

Husson produced before the referee the several mortgages and assignment held by him, proved the facts above stated, that the original mortgage to Moore was for part of the purchase-money, that it had been reduced by payments and the subsequent mortgages given in renewal, to show the true amount due, and that Lutz, Doll & Germann, and Lambrecht never claimed, except subject to Husson's mortgages.

The referee reported November 1, 1856, after a year's litigation before him, that there was due to Husson $4,024.90, and that the net proceeds of sale of the articles mortgaged to him amounted to $3,609.70, which amount he ordered the said receiver to pay to Husson, and annexed to his said report the questions of law and fact, as decided and found by him.

On appeal to the Special Term, the referee's report was confirmed, and on further appeal to the General Term the judgment of the Special Term was affirmed, no opinion being delivered by the latter court.

The reasons assigned by the referee and by the Special Term in support of the conclusions at which they arrived

were substantially these: 1. That although the statute
(2 R. S., 136) declares that the mortgage, unless filed, shall
be absolutely void as against the creditors of the mortgagee,
and subsequent purchasers and mortgagees in good faith, yet
the creditor may waive this right, and treat the mortgage as
valid, and be estopped by his acts from insisting upon its
invalidity. 2. That although the plaintiff might perhaps
have treated the mortgage as a nullity, and sold the property
under his execution irrespective of it, or filed a bill for the
single purpose of removing out of the way of his execution
the fraudulent obstruction interposed by the mortgage, yet
he has done neither of these things, but causing his execu-
tion to be returned unsatisfied, has filed a bill in the nature
of a creditor's bill to reach the equitable interests of his
debtor, and charged those interests to be the property, real
and personal, connected with this stage route, subject to the
mortgage now in question, seeking to apply that property
thus subject to, and not regardless or independent of that
mortgage, to the satisfaction of his debt. 3. That the Special
Term, on the hearing of that case, to which Husson was in no
wise a party, in conformity with the aspect of it presented
by the plaintiff, pronounces the sale to Lambrecht and the
assignment to Brewer fraudulent and void, and directs the
receiver to sell the property, subject to the same incumbrances
to which it was liable when Lambrecht took it, the mort-
gage to Husson being one of these; that the plaintiff sub-
submitted to this order and acted upon it; that under it the
receiver took and could sell no more than the interest of
the mortgagors subject to the mortgage. 4. That the adver-
tisements of sale, the understanding and conversations of
the parties interested therein, and the sale itself, were in
conformity with those views, and showed the concurrent
construction put by all of them upon the order of the court
to be, that it was the proceeds of the sale subject to the
mortgages, or the net proceeds after deducting the mort-
gages, to which the plaintiff was entitled under the judgment
of the court, and nothing more, and that, therefore, when
the plaintiff and Husson agreed that if the property was sold

in parcels it was.to be free from incumbrance, they intended, and, indeed, expressly agreed, that Husson's mortgage should be first paid out of the proceeds. of the sale.· 5. That such also was the equitable aspect of the case; that the Husson mortgage was given for the balance of the purchase-money; that in equity Lutz, Doll & Germann never owned the entire interest in the property, and that so much as was not.paid for equitably belonged to; Moore, or Husson, his assignee.·

From the judgment of the General Term the plaintiff has appealed to this court.

*Solomon L. Hull*, for the appellant.

*Marshall S. Bidwell*, for the respondent.

HOGEBOOM, J.   The reasons rendered by. the referee .at the special term for the disposition of the case made .in .the court below appear to me to be cogent and conclusive,. and I do not deem it necessary to enlarge upon them.   I content myself with a brief reference to some of the propositions advanced by the counsel for the appellant.

1. It is said that the commencement of this action operated to confer upon the plaintiff a specific lien upon the property in question, and that the mortgage of Husson was entirely inoperative against the plaintiff because it was not filed.

It is not necessary to discuss either of these propositions, because the decision in favor of Husson is placed upon a ground entirely distinct and independent of these and consistent with the assumption that both of these propositions may be entirely correct.

2. It is said that Husson's mortgage being thus entirely void he was not in any way prejudiced by the sale.   But, as to this, it must be observed: First, that Husson was not a party to the action, and has had no opportunity to set up, by answer or fully to establish by proof what facts he might wish to present by way of obviating the necessity for filing his mortgage; second, Husson was undoubtedly prejudiced by the sale if it was not carried out in conformity with the stip-

ulation to which he was a party, and on which he relied for the protection of his interests.

3. It is said that the alleged agreement, that Husson was to be paid out of the proceeds of the sale, was void as being without consideration, and being void could not operate as an estoppel against the plaintiff. First, this assumes what Husson has not had an opportunity fully to controvert, to wit, the invalidity of his mortgage. Second, the agreement was not without consideration. Husson at all events made a claim under his mortgage, and the claim was sufficiently plausible and colorable to operate as the foundation of a sufficient consideration to make some equitable arrangement in regard to it. The plaintiff had not treated it as invalid, nor made Husson a party to a suit to set it aside, and the court had expressly directed a sale subject to it. The bounden duty of the receiver was to conform to the order of the court, from which plaintiff had taken no appeal, and the latter was not therefore in a situation to attack the mortgage of Husson. But, apprehending that the mortgage of Husson might embarrass the sale and cause a sacrifice of the property if sold in parcels, the plaintiff made an explicit arrangement with Husson, which the plaintiff expected to be advantageous to him, but which he now wishes to repudiate, that the property should be sold, discharged of the incumbrances which were to be paid out of the proceeds. I think the plaintiff is precluded from receding from his agreement by every consideration which enters into the idea of an equitable estoppel.

4. It is said that the plaintiff acted in ignorance of the fact that the mortgage was not filed, and therefore should not be bound by the course of proceeding to which he assented. First, it is probably true, though it does not appear to be expressly proved, that plaintiff was ignorant of the filing of the mortgage, but there is no pretense or proof that Husson fraudulently concealed that fact from him. The plaintiff had an opportunity and was bound to acquaint himself with the fact, and his neglect to do so was his own misfortune. He must be bound by his agreement if he was not inequitably sur-

27

prised or fraudulently entrapped into it by Husson. Second, there is no certainty that he would not have made precisely the agreement that he did if he had been aware of the non-filing of the mortgage. He does not say that he would not. He had instituted proceedings without making Husson a party, having entirely a different aspect, which disabled him from setting aside that mortgage without entirely revolutionizing the framework of his proceedings. The court had made an order upon the assumption that Husson's mortgage was to be paid. The plaintiff had practically adopted that order, and if he had then ascertained for the first the non-filing of the mortgage he might perhaps have very rationally concluded that it was better to go on and take his chances for ultimate compensation out of the proceeds of a sale subject to the mortgage, which he probably supposed would protect his debt as well as the mortgage, than to retrace his steps, pay the costs, begin anew, make Husson a party to the new proceedings, charge the invalidity of the mortgage, with the chances of possible, if not probable discomfiture.

In every aspect in which I have been able to consider the case I think the order of the court below was right and should be affirmed.

Wright, J. The appeal is by the plaintiff from so much of the judgment as declares Husson to be entitled, as the holder of a chattel mortgage upon the property, to be paid out of the fund arising from a sale of such property under the order of the court. The action was by the plaintiff, a judgment creditor of the defendants Lutz, Doll and Germann to set aside what was claimed to be, a fraudulent transfer of the property by them to the defendant Lambrecht, and to have the same sold, and the proceeds applied to the payment of his judgment. Husson, who held a chattel mortgage on it, for a part of the purchase-money (the existence of which mortgage the assignees of the plaintiff had knowledge of, before obtaining a confession of the judgment), was not made a party. The court decided the sale and assignment to Lambrecht to be void, and instead of simply setting aside the

conveyance, and allowing the plaintiff to issue a new execution, directed a receiver to be appointed to sell the property, subject to the same incumbrances to which it was liable when transferred to Lambrecht. This was the only direction that could rightly have been given. At the time Lambrecht took the property, it was subject to Husson's mortgage, which had been given to Lutz, Doll and Germann for an unpaid portion of the purchase-money. Husson, not being a party, his rights could not be affected by any proceeding in the suit; and the court having set aside the fraudulent conveyance to Lambrecht, and taken the property into its own hands, could not equitably make any other disposition of the case. The only question involved was as to what passed to Lambrecht by the conveyance from Lutz & Co., which was adjudged to be void; and this was the property which Lutz & Co. held, subject to the Husson mortgage. This mortgage was a valid lien as against them when the conveyance was made to Lambrecht; and the plaintiff, while admitting this, did not make Husson a party to the suit, or suggest that his mortgage was invalid, or ask any relief other than the pretended transfer to Lambrecht might be set aside. All that the receiver could rightly take under the order, or could sell, was the property, subject to Husson's mortgage. The court might have directed the mere title of Lutz, Doll & Germann to be sold, without giving Husson an opportunity to be heard; but in an equitable proceeding no court orders a receiver to sell the thing itself, without giving a party claiming title to it, a hearing. The plaintiff acquiesced in the decision appointing a receiver to make sale of the property itself, subject to the incumbrance to which it was liable, when transferred to Lambrecht; making no attempt to alter or modify it, but consenting thereto. His attorney subsequently, in concert with the receiver, prepared notices of the sale of the property, in which it was stated, that if sold in bulk, the sale would be subject to two chattel mortgages (Husson's mortgage being one of them), but if sold in parcels, the sale would be free from incumbrances; and afterward, and on the day of sale (the plaintiff, Husson, and other parties interested in the

property, being present), an attempt was twice made to sell in bulk, but no bid being made, it was sold in parcels, and as the evidence clearly shows, in pursuance of an understanding and agreement between the plaintiff and Husson, that the mortgage of the latter should be first paid from the proceeds of the sale. Having this agreement with the plaintiff, Husson permitted the sale to be made free from his mortgage, and the articles to be separated, expecting to be first paid; but, in disregard of the agreement, the entire proceeds were brought into court by the receiver. Subsequently a reference was ordered to examine the accounts of the receiver, and to take proof of, and pay liens, if any; a copy of the order and notice of the reference being directed to be served on Husson. At this point of time Husson first appeared as a party to the litigation, and, very plainly, thus informally drawn in, if not on the plaintiff's own motion, at least by his consent. Up to this time, it seems all the parties interested seem to have agreed, that it was the net proceeds of the property, after payment of all the incumbrances, including Husson's mortgage, that the plaintiff was entitled to under the decision and judgment of the court, and nothing more. It had been supposed that the whole property of the Manhattanville line would sell for a sufficient sum to meet the incumbrances and pay the plaintiff's judgment; and on this supposition the plaintiff acted, in concert with Husson, up to the time of the sale. In this there was a disappointment; the proceeds thereof being insufficient to meet the liens. Accordingly, on the reference the plaintiff endeavored to avoid them entirely.

The objection urged before the referee against considering Husson's mortgage a lien upon the proceeds of the sale was, that such mortgage was not filed at the time the plaintiff's action was commenced. I do not think the objection valid. It was not important, as affecting the rights of the parties. that the mortgage should have been on file when the suit was instituted. As the statute declares, in terms, that an unfiled chattel mortgage shall be void as against the creditors of the mortgagor, it is probable (although the mortgage in this case was but a continuance of a series of mortgages for

the unpaid balances of the original purchase-money for the property due from Lutz & Co., and the plaintiff had actual notice thereof), that had the plaintiff, on obtaining his judgment against the mortgagors, issued his execution and sold the property then in the hands of Lambrecht, he could not have been held as a trespasser at the suit of Husson, the mortgagee. But an essentially different course was pursued. Whilst the mortgage was confessedly valid as against the mortgagors without filing, and could have been made so at once as against their creditors, an action to reach the equitable interest of the mortgagees in the property was commenced. Lambrecht was, at the time, in possession of the property as owner, by virtue of a transfer from the mortgagors, and recognizing the Husson mortgage as a valid lien, the only relief prayed for was to set aside the transfer to Lambrecht. All that was attempted to be reached, and indeed all that could be reached, was the interest which Lutz, Doll & Germann had in the property in the hands of Lambrecht; and this interest was their equity of redemption, or right to any surplus beyond the mortgage. To enable the plaintiff to reach the interest of Lutz, Doll & Germann in the property, it was sought to have the transfer to Lambrecht set aside, which was a transfer subject to the mortgage. Procuring this transfer to be set aside did not entitle the plaintiff to reach an interest which Lutz, Doll & Germann never conveyed. As between Lutz & Co. and Husson, there is no pretense that the mortgage can be impeached, and the court did not, and equitably could not (Husson not being a party to the suit) give the plaintiff greater rights than the extent of Lutz, Doll & Germann's interest. This was all that was done, and the plaintiff submitted to a judgment, limited to setting aside the sale to Lambrecht, as to him, and directing, not a sale of Lutz & Co.'s interest in the property, but a sale of the property itself, subject to the same incumbrances to which it was liable when transferred to Lambrecht. The judgment obtained by the plaintiff, under such circumstances, does not entitle him to payment of it in prefer-

ence to Husson's mortgage. The lien acquired by the filing of the complaint was not a specific lien upon the property in question, but only on the equitable assets of Lutz, Doll & Germann, in the hands of Lambrecht. It extended only to such estate as Lutz, Doll & Germann had in the property, and to that extent and no further, the filing of the complaint operated as an equitable attachment. It could not effect the prior title to or lien of a person not made a party to the action. The case would have been different had the plaintiff, after obtaining his judgment, issued an execution and levied upon the property itself. That would have been the case of a judgment creditor levying an execution upon specific property of his debtor, and raising the question affecting the title or right of a third person to or in the thing itself. There was, therefore, no lien acquired in this case upon the property by the filing of the complaint in October, 1854, and when the Husson mortgage was off the files in the register's office. It was entirely immaterial in this equitable proceeding to reach the assets of Lutz, Doll & Germann, as affecting the rights of Husson, whether or not his mortgage was on file when the suit was commenced. The statute, it is true, declares that a chattel mortgage shall be absolutely void as against the creditors of the mortgagor when the property is left in his possession, unless filed. This does not mean creditors at large.

The creditor must have attached the mortgaged property and acquired a lien on it in some legal way before the question can be raised. If it be a judgment creditor, as in this case, his execution must be levied. Here there was no levy. Lambrecht was, at the time the execution was returned unsatisfied, the owner of the chattels and in possession, subject to Husson's mortgage. By instituting an equitable proceeding to collect his debt the plaintiff acquired no lien, nor was he in a position of a creditor entitled to allege that Husson's mortgage, from not being filed when he commenced the proceeding, was absolutely void as against him. If, however, he was in a situation to raise the question of the invalidity of Husson's mortgage as against him, on the

ground that it was not filed in October, 1854, it is clear to my mind that a creditor, as in this case, with full notice of a prior mortgage, seeking to collect his debt out of specific property, by a proceeding in equity, stands in the same position as a subsequent purchaser or mortgagee. He takes only the equities of his debtor.

There is, however, another reason why the plaintiff is not entitled to have the proceeds of the sale applied in payment of his judgment in preference to Husson's mortgage. On the face of his complaint it had been shown that the transfer to Lambrecht was made subject to Husson's mortgage, the validity of which was nowhere questioned, Husson not being a party. The court must either have given a judgment simply setting aside the conveyance, or do, what it undoubtedly possessed the power of doing, set it aside and take the property and dispose of it equitably. Accordingly, a judgment was given declaring the conveyance to Lambrecht to be void, and ordering the appointment of a receiver to take and sell the property, subject to the incumbrances upon it at the time of the transfer—Husson's mortgage being the only lien. In this judgment the plaintiff acquiesced and has never appealed from it. If he had appealed he could not have altered it, as Husson, the mortgagee, was not a party. Husson's right to be paid his mortgage is, therefore, *res adjudicata.*

There is yet another reason for postponing the payment of the plaintiff's judgment to that of the mortgage of Husson. The order of the court was to sell the property, subject to the incumbrances, including this mortgage, and if Husson had not consented it could not have been sold in any other way. To have effected a sale of it, subject to incumbrances, would have required it to have been sold in bulk. Before the sale the plaintiff, Husson and others interested, fixed a price at which it was to be sold in bulk, and if so sold it was agreed that the Husson mortgage was to remain; but if the sale was in parcels, and the property scattered, the mortgage was to be first paid from the proceeds of sales. An ineffectual attempt was made to sell in bulk, there being no

bidders, when it was sold in parcels under this understanding and agreement. I think the plaintiff is estopped by the agreement from insisting that Husson's mortgage is not entitled to priority of payment out of the proceeds of the sale. To allow him, after the sale has taken place, on the faith of the agreement, to repudiate it, and when Husson cannot be put in the same position he was in before the sale, would be unreasonable and unjust. It would enable the plaintiff to perpetrate a wrong and a fraud upon him. It is to be remembered that had Husson not consented, the sale must have been subject to his mortgage. It is immaterial whether the plaintiff knew that the mortgage had not been filed. There was no fraud on Husson's part, and the plaintiff knew the law on the subject as much as if he had been expressly told what it was, and was bound to make inquiry or search if he thought it important. At all events, it was too late to object after Husson had allowed the sale to take place under the agreement, and could not be replaced in his former position.

The judgment should be affirmed.

Affirmed.