ALEXANDER T. STEWART, Appellant, v. GEORGE W. BEALE and HENRY A. MORRIS, Impleaded with ABRAHAM VAN HOESEN and others, Respondents.

*Mortgage on chattels — failure to file, effect of — Execution, a lien before levy — when and to what extent — Court of equity — distribution of moneys in court — Res inter alios acta.*

A creditor at large of a mortgagor has no standing in court, to have a chattel mortgage declared void, on the ground of its not being filed in the proper office, and a party to maintain such right must be a judgment creditor with a lien upon the mortgaged property, or valid claim to its avails.

But where a mortgage, covering both real and personal property, has not been filed in the proper office, as a chattel mortgage, it is void, as to the personalty, against the claim of a creditor arising since the making, but before the filing of such mortgage, on which judgment has been obtained, and execution issued to the sheriff of the county where such personal property is situated, although no actual levy has been made by such officer.

An execution delivered to the sheriff without actual levy, creates a lien on all the judgment debtor's personal property within the county from the time of its delivery, enforceable in a court of equity; and such lien can only be

defeated by the title of a purchaser in good faith, without notice of the execution. (BOCKES, J.)

*Beck* v. *Burdett* (1 Paige, 305) approved; *Hathaway* v. *Howell* (54 N. Y., 97) distinguished.

The plaintiff having a mortgage, covering both real and personal property, but not filed, after a subsequent creditor had obtained judgment and issued execution to the sheriff of the county where such chattels were situate, applied for and obtained the appointment of a receiver of such chattels, and thus prevented such judgment creditor from levying his execution and satisfying his judgment. The moneys on a sale of such chattels having been paid into court for distribution by it as a court of equity, among the parties entitled thereto, *held* (per LEARNED, P.J.), that such mortgage was void as against such judgment creditor, and that the court having, by its appointment of a receiver, prevented a levy whereby the judgment creditor would otherwise have been paid, was bound to preserve his rights, and award the fund to him.

The defendant Van Hoesen, after the execution of the mortgage to the plaintiff, which was not filed, and before the entry of judgment and issue of execution by the defendants Beale and Morris, executed a subsequent mortgage to one Falls, on the same property, which second mortgage was duly filed, and default made thereon, also before issue of said execution, *held* (per BOCKES, J.), that although the title to the chattels vested in Falls on default, and consequently there was no levyable interest in such chattels in the judgment debtor, Van Hoesen, to be reached by the executions of Beale and Morris, yet that this fact could not be taken advantage of by the plaintiff as against Beale and Morris to defeat their claim to such chattels or the avails thereof, after satisfying the Falls mortgage, on the ground of *res inter alios acta*.

APPEAL to the General Term from a judgment of the Special Term of Columbia county, determining the rights of the parties to certain moneys in the hands of a receiver, entered on the 15th day of June, 1875. The action was brought to foreclose a mortgage of $30,000 held by Alexander T. Stewart, the plaintiff, upon the mill property of Abraham W. Van Hoesen, at Stuyvesant Falls, Columbia county, New York. The judge at Special Term found, among other facts, that said mortgage was in form a real estate mortgage, but after the description of the real estate contained the words following viz.: "Together with the buildings, fixtures, machinery and chattels of every kind now situated thereon, or used in connection therewith, with all the right of every nature belonging to said property,· or necessary or convenient to be used in the proper and complete enjoyment of the same, and which the parties of the first part now own, or are entitled to."

No other or further description of said machinery or other per-

sonal property was contained in said mortgage, than as above recited.

The said mortgage was recorded in the office of the clerk of Columbia county, February 10th, 1869, but the same was not, nor was any copy thereof, filed as a chattel mortgage, or otherwise, in the town clerk's office of the town of Stuyvesant in said county, until November 20th, 1872, when such mortgage was for the first time filed in said town clerk's office, and thereafter duly renewed on the 18th December, 1873, by filing a copy thereof, with the statement indorsed thereon required by law.

At the time of giving said mortgage the said Van Hoesen resided in said town of Stuyvesant, and has ever since continued to reside in said town; and said mortgage was made in good faith and without any fraudulent intent in fact. And said personal property consisted of the machinery used in said mill for the operation thereof; and the same remained in the possession of said Van Hoesen, from the date of said mortgage, for the purpose of operating said mill, and was so used by him for that purpose until a short time before taking possession thereof by the receiver in this action.

In the months of June and July, 1870, the defendants Beale and Morris, composing the firm of George W. Beale & Co., sold and delivered to the defendant A. W. Van Hoesen, merchandise, consisting of wool, and took from said Van Hoesen on account thereof his notes for the price thereof, dated in June and July, 1870, all payable in four months from their respective dates; said notes amounting in the aggregate to $10,299.42.

These goods were sold and delivered to said Van Hoesen before the plaintiff's mortgage was filed in said town clerk's office; and at the time of the sale thereof the defendants Beale and Morris had no actual knowledge or information of the fact that the plaintiff's mortgage covered the machinery or other personal property in said mill.

In December, 1870, the defendants Beale and Morris commenced an action in the Supreme Court in Westchester county against said Van Hoesen upon said notes, and on the 5th January, 1871, obtained a judgment against him in said action for the amount then due and unpaid thereon, viz., $9,652.67, no part of

which has yet been paid. The judgment roll was duly filed, and said judgment docketed in the office of the clerk of Westchester county, where said action was pending January 5th, 1871.

In the months of August and September, 1870, the said defendants Beale and Morris sold and delivered to the said Van Hoesen other quantities of wool, and received from said Van Hoesen, on account thereof, his notes for the price thereof, dated in August and September, 1870, payable in four months from their respective dates; which notes amounted in the aggregate to $5,084.56.

These goods were also sold and delivered to said Van Hoesen before the plaintiff's said mortgage was filed in said town clerk's office; and at the time of such sale the said Beale and Morris had no actual knowledge or information of the fact that plaintiff's mortgage covered the machinery or other personal property in said mill.

In January, 1872, the said Beale and Morris commenced an action in the Supreme Court in Westchester county, against said Van Hoesen, upon said notes, dated in August and September, 1870, as aforesaid, and on the 2d day of March, 1872, obtained a judgment against him in said action for the amount then due thereon, viz., $5,522.81, no part of which had yet been paid; the judgment roll being filed, and the judgment docketed in the office of the clerk of Westchester county, March 2d, 1872.

The defendant A. W. Van Hoesen continued in the undisturbed possession of all the machinery and other personal property referred to in the plaintiff's said mortgage, until September 19, 1873, when possession thereof was taken by the receiver appointed in this action.

Prior to that time there was no actual or continued change of the possession thereof.

The defendant A. W. Van Hoesen made and delivered to one Daniel J. Falls, a chattel mortgage upon said machinery and other personal property in said mill, dated March 15th, 1872, and acknowledged March 25th, 1872, to secure $4,500, which mortgage was duly filed March 28, 1872, in said town clerk's office, and was duly renewed by the filing of a copy thereof, with the statement thereon indorsed required by law, March 12th, 1873. And said mortgage was again duly renewed in like manner February 25th,

1874, upon which mortgage there was due and unpaid before and at the time of the commencement of this action something over $3,500, default having been made in the payment thereof in January, 1873. Said mortgage was made in good faith to secure an actual indebtedness, and without any fraudulent intent.

On the 17th September, 1873, an order was made in this action, appointing Arthur M. Hanks receiver of both the real property and of all the said machinery and other personal property in said mill, with an order to show cause why said appointment should not be continued *pendente lite*, and said receiver took possession of said machinery and other personal property, under said order, of September 19, 1873, but did not remove the same from said mill.

On the 3d day of December, 1873, an order was made in this action continuing the said receivership *pendente lite*, and said receiver continued in the possession of said property from September 19th, 1873, until the sale thereof by him.

On the 2d day of December, 1873, transcripts of both the above mentioned judgments in favor of said Beale and Morris, and against said Van Hoesen, were duly filed and said judgments docketed in the office of the clerk of Columbia county; and on the same day executions on both of said judgments were issued and delivered to the sheriff of Columbia county, which executions are still outstanding and uncollected, and under which no levy or levies had ever been made.

During the pendency of this action, by an order entitled in this action, and also entitled in the action of *Beale and Morris* v. *Van Hoesen and others*, tried herewith, the said receiver (who had also been appointed receiver in said other action) was authorized and directed to make a sale of said machinery and other personal property, and, after paying his lawful expenses and commissions, to pay out of the proceeds thereof the amount due on said mortgage to Daniel J. Falls, and to deposit the balance of said proceeds in the New York Life Insurance and Trust Company, in the city of New York, to the credit of both said actions, to abide the result of this action, and of said other action commenced as aforesaid by said Beale and Morris, and to be drawn out only upon the order of this court.

Such sale took place July 9th, 1874; the receiver has made

report thereof, which report has been confirmed by an order of this court, by which it was adjudged that the gross proceeds of such sale of the personal property were $11,286.03; and after payment of the mortgage to Daniel J. Falls, January 21, 1875, and the commission and expenses of such receiver, there remained a balance of $6,473.68 as the net proceeds of such sale; which sum was deposited by said receiver February 3d, 1875, in the New York Life Insurance and Trust Company, in the city of New York, to abide the result of this action, and of said other actions brought by said Beale and Morris.

A sale of the real estate described in the plaintiff's mortgage has also been made under a decree in this action, and the amount realized upon such sale was insufficient to pay the amount due upon plaintiff's mortgage; leaving a deficiency therein of about $13,000.

It was provided in and by said decree that the same was made without prejudice to the claim of the plaintiff, or of the defendants Beale and Morris, to the personal property, or to the proceeds thereof, mentioned in the complaint and mortgage therein described, the title to which and the priority of liens upon which were reserved to be further litigated in this action.

*Henry E. Davies* and *Edward B. Hilton*, for the appellant.

*R. E. Andrews,* for the respondents Beale and Morris.

BOCKES, J.:

The leading question on this appeal is, whether the respondents, at the time they took their position in court in hostility to the plaintiff's mortgage, and demanded that it be adjudged void as to them, were in a position to assail that instrument, on the ground that it was not filed in the proper office to secure its lien, when their claims against the mortgagor were contracted. They had obtained judgments against the mortgagor on their claims, and had issued executions thereon to the sheriff, but that officer had made no levy thereunder on the mortgaged property, nor had he made return of them, or of any proceeding, on his part, under them.

It may be well first to examine the case without regard to the

Falls mortgage. It will then stand as a case between the appellant, as mortgagee of the property in question, and the respondents, as creditors of the mortgagor with judgments and executions; the latter claiming to have the appellant's mortgage declared illegal and void as to them. Leaving the Falls mortgage out of the case, this was the position of the parties when the respondents put in their supplemental answer to the complaint in the original action, and when they filed, what would have been called under the old chancery practice, the cross-bill. Thus the respondents had judgments and executions unspent in the hands of the sheriff, but no levy, when they asserted their rights in court, and claimed relief through the exercise of its equitable powers. The appellant insists that the respondents had no standing in court, to assail the validity of his mortgage on the ground urged, for the reason that they had neither a levy on the mortgaged property under execution against the mortgagor, or a return of such execution unsatisfied. The decisions are numerous and uniform to the effect, that a mere creditor at large of a mortgagor has no standing in court to have a chattel mortgage declared void on the ground here relied on; and that a party, to maintain such right, must be a judgment creditor with a lien upon the mortgaged property, or valid claim to its avails. This position is not denied; indeed, is conceded. But, on the part of the appellant, it is insisted that an actual levy was necessary to give the requisite lien, whereas, on the part of the respondent, it is urged that the delivery of the execution to the sheriff created such lien in law, without levy or further action by that officer; that is, that the debtor's goods and chattels were bound from the time of delivery for their benefit, so as to secure to them a lien thereon, enforceable in and by a court of equity. The precise question here presented was determined in *Beck* v. *Burdett* (1 Paige, 305), and it may be well to quote the language of the chancellor, as it is directly applicable to the case in hand. He says: " There are two classes of cases where a plaintiff is permitted to come into this court for relief, after he has proceeded to judgment and execution at law without obtaining satisfaction of his debt. In one case the issuing of the execution gives the plaintiff a lien upon the property, but he is compelled to come here for the purpose of removing some obstruction, fraudulently or inequitably interposed

to prevent a sale on the execution. In the other, the plaintiff comes here to obtain satisfaction of his debt out of property of the defendant which cannot be reached by execution at law.

"In the latter case his right to relief here depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction of his judgment. In the first case the plaintiff may come into this court for relief immediately after he has obtained a lien upon the property by the issuing of an execution to the sheriff of the county where the same is situated; and, the obstruction being removed, he may proceed to enforce the execution by a sale of the property, although an actual levy is probably necessary to enable him to hold the property against other executions or *bona fide* purchasers." To the same effect is the remark of Chancellor KENT, in *Hendricks* v. *Robinson* (2 Johns. Ch., 296), where he says: "The preliminary step which seems to be required is, that the judgment creditor should have made an experiment at law, and bound the property by actually suing out execution." So Judge SPENCER says, in *Hotchkiss* v. *McVickar* (12 Johns., 407): "The execution creates the lien for the benefit of the creditor; and the sheriff is the mere minister of the law to procure for the creditor satisfaction of the debt." These remarks have sanction in several earlier cases. (*Angell* v. *Draper*, 1 Vern., 399; *Shirley* v. *Watts*, 3 Atk., 200; *Payne* v. *Drewe*, 4 East, 523.) And in *Lambert* v. *Paulding* (18 Johns., 311) it was held that the delivery of an execution to the sheriff gave a lien without levy on the debtor's property, so as to entitle the execution creditor to its avails when levied on and sold under a second execution, by the sheriff of the adjoining county. The right to proceed on execution without levy, in a case like the one at bar, is recognized in *McElwain* v. *Willis* (9 Wend., 548). In *Ray* v. *Birdseye* (5 Denio, 619) the chancellor said that when an execution had been actually delivered to the sheriff to be executed, it is a *legal lien* upon all the property of the judgment debtor liable to execution within his bailiwick. So, in *Roth* v. *Wells* (41 Barb., 194), it was said that no actual levy was essential to create the lien. This remark received approval in the same case in the Court of Appeals (29 N. Y., 471), although it was pronounced *obiter* in *Hathaway* v. *Howell* (54 id., 97), which latter case will be hereafter considered.

And, again, in the Court of Appeals, in *Bond* v. *Willet* (29 How., 47) it was said that the execution bound the judgment debtor's property, from the time of its delivery to the sheriff, and that the *lien thus created* could only be defeated by the title of a purchaser in good faith, without notice of the execution. In *Shaw* v. *Dwight* (27 N. Y., 249) Judge DENIO quotes with approval the rule laid down by the chancellor in *Brinkerhoff* v. *Brown* (4 Johns. Ch., 671), thus : " If the plaintiff seeks aid as to real estate he must show a judgment creating a lien upon such estate. If he seeks aid in respect to personal estate, he must show an execution *giving* him a *legal preference* or lien upon the chattels." So Commissioner EARL, in *Fox* v. *Moyer* (54 N. Y., 129), in speaking of a case like the present one, said : " The weight of authority seems to be that the judgment, with an execution issued and not returned, is sufficient to enable the plaintiff to maintain his action. The learned commissioner referred to a remark of Judge DENIO in *Shaw* v. *Dwight* (*supra*), to the effect that the execution should be both issued and returned unsatisfied. But such remark was made with reference to real property, and was based upon the necessity of showing an inability to collect the debt by process against the debtor's goods and chattels, which was a prerequisite to a right to resort to real property. There are many other cases beside those above alluded to, where the same rule is declared, among them the following : *Rinchey* v. *Stryker* (28 N. Y., 45, 50); *Andrews* v. *Durant* (18 id., 496); *Bank* v. *Olcott* (46 id., 12–18); *Noble* v. *Holmes* (5 Hill, 194); *Falconer* v. *Freeman* (4 Sandf. Ch., 565); *Thompson* v. *Van Vechten* (27 N. Y., 568–582). In some of the cases cited — perhaps in many of them — the precise question was not before the court. In others of them, however, the point was directly decided. (See, also, *Heye* v. *Bolles*, 33 How., 277.)

It is now proposed to see if this rule, so repeatedly declared, has been at all impugned by the late decision in *Hathaway* v. *Howell* (54 N. Y., 97). No intimation is there given of an intention to overrule former decisions, or to lay down any new rule. On the contrary, the law, as established in an unbroken line of authorities from a very early period, is fully recognized. How and to what extent the goods and chattels of a debtor were bound by the

delivery to the sheriff of an execution against him was considered both under the statute and the decisions, and it was again held, in accordance with the cases, that the property was bound from the time of the delivery of the process for the benefit of the execution creditor, so as to give him a lien thereon; the point on which the decision turned being this: that *such lien was lost* by the negligence of the officer in omitting to make it effectual by an actual levy within the life of the process. Commissioner LOTT says, in terms, that the debtor's property became bound by the .executions on their delivery to the sheriff, and continued subject to them until the return day thereof; and he states the question there before the court as follows: whether the sheriff, by his failure or omission to make an actual levy, during the lifetime of the executions, *lost* all right to interfere with, or in any manner to exercise dominion over the property after their return day. This question was decided by the court affirmatively. Now the case at bar is quite different. Here the respondents, having secured their lien on the debtor's property by issuing their executions to the sheriff (the case is now being considered as if the Falls mortgage was not in it), proceeded, at once, while their lien remained to them, to assert and enforce it. Finding an illegal obstruction in the way of enforcing their lien by further proceedings at law, they invoked the aid of the equity powers of the court for its removal. According to their showing, the property was subject to their executions, and they had a right to seize and sell it, but were impeded by an unlawful obstruction interposed by a party who claimed it, and held its possession from them under an instrument which the law declared void as to them. So this was a case of an inequitable obstruction, interposed by a party against whom they proceeded; embarrassing them in the collection of their judgments, independently of which their remedy at law would have been ample. They had proceeded at law to the utmost extent unimpeded. Thus they had a right to come into a court of equity for relief, and, on the case so made, that court had jurisdiction in that behalf.

No matter now about any actual levy of the executions upon the property. Jurisdiction being acquired, means would be employed, through the assistance of a receiver or otherwise, **to**

work out justice between the parties, according to the equities of the case, as it existed when the aid of the court was invoked.

In the view here taken of it, this is not a case of a simple creditor's bill, where choses in action and equitable interests of the debtor are sought, in order to satisfy a judgment therefrom. In such case, there must be an execution and return *nulla bona* before proceedings in equity can be had. An execution returned unsatisfied is necessary to jurisdiction. Not so when the party seeks the aid of the court in regard to property liable to seizure and sale under execution, alleging an illegal impediment to further proceedings at law. In such case, as is above shown, an execution in the hands of the sheriff, without levy, creates a legal lien on the property for the benefit of the execution creditor, which is all that is necessary to give him standing in court, in view of the desired relief.

In reaching this conclusion I have not been unmindful of the remark of Judge WRIGHT in *Dunlevy* v. *Tallmadge* (32 N. Y., 457), that before a judgment creditor was entitled to the aid of the Court of Chancery against the goods and chattels of his debtor, he must have taken out execution at law and caused it to be levied or returned. So too the same learned judge made a similar remark in *Lane* v. *Lutz* (1 Keyes, 203, 214). Mr. Justice FIELD also said the same in substance in *Jones* v. *Green* (1 Wall., 330). But it will be found, on an examination of those cases, that those remarks were unnecessary to their decision; and it may be added, that if literal force be claimed for them, they stand in direct conflict with a very long line of decisions in this State. Indeed the very cases cited by Mr. Justice FIELD in support of his remark, maintain the conclusion herein above reached, that an actual levy was not necessary before suit in a case, such as we are here considering. Mr. Justice FIELD cites *Crippen* v. *Hudson* (13 N. Y. [3 Kern.], 161), but JOHNSON, J., there says (p. 166), that there were cases in which a judgment creditor might resort to a court of equity, where the property was in its own nature subject to sale upon execution, and the creditor had obtained judgment and issued execution, and thus acquired a specific lien upon the property in question, but was prevented from obtaining satisfaction of his debt by some fraudulent or inequitable obstruction or embarrassment.

Nor is any different rule established or suggested in *In re Collins* (12 Bank. Reg.), or in *Geery* v. *Geery* (in the Court of Appeals, MS. opin., EARL, J.). In the former case Mr. Justice HUNT says : " There must be   *   *   *   execution or an attachment levy, or its equivalent, constituting a lien on the specific chattel." He does not say there must be an *execution levy*, but merely execution. If the lien claimed be by attachment, there must be a levy ; for the property is not in that case, as in the case of an execution "bound" from the time of the delivery of the process to the sheriff. (*Rodgers* v. *Bonner*, 45 N. Y., 379, 382.) In *Geery* v. *Geery*, Judge EARL fully recognizes the rule declared in the numerous cases above cited. Thus it seems the respondents were clothed with judgments and executions against their debtor's property, which executions in the hands of the sheriff and in full force, gave them a lien thereon ; and this lien they might vindicate against illegal obstructions and impediments in a court of equity. Nor did the fact that the possession of the property had passed to a receiver on the application of the appellant, the mortgagee, change the rights of the respondents. The appellant was proceeding in court to foreclose the mortgagor's equity of redemption in the property, and he applied for and obtained a receiver in that proceeding, who as such took possession of the property. The receiver was but the custodian of the property, and at most could only be deemed as holding possession for the mortgagee. Thus the latter could claim no advantage from the receiver's possession, beyond what he might claim had he taken possession himself as mortgagee. The property was still subject to the rights of any one who could make a better claim. (*Delaware* v. *Ensign*, 21 Barb., 89.) Therefore, leaving out of view the Falls mortgage, as hitherto has been done in its examination, and this case seems to come directly within the decision in *Thompson* v. *Van Vechten* (27 N. Y., 568), approved in *Parshall* v. *Eggert* (54 id., 18, 22). The appellant's mortgage, although in existence, was not filed in the proper office, so as to secure its lien on the property, when the respondents' debts against the mortgagor, on which they obtained their judgments and issued executions, were contracted. It was, therefore, void as to them, by the express terms of the statute, and this notwithstanding the instrument was subsequently filed, before the respondents acquired a position

to attack it as judgment creditors. Having ultimately acquired that position, they could hold the preference given them by the judgment, from which the appeal is here taken.

We must now bring the Falls mortgage into the case in the further consideration of the appeal. It is insisted on the part of the respondents, that this is a subject with which the appellant has no concern; that he can claim no benefits or advantages to himself therefrom, but it may be well to see how the case would stand, giving that mortgage full force and effect in respect to the respondents' rights.

It appears that the mortgagor after giving to the appellant his mortgage, and while it remained unfiled, made a second mortgage, covering the property, to Mr. Falls, who received the security in good faith, and without notice of the appellant's unfiled mortgage. Mr. Falls immediately placed his mortgage on file, and thus secured to himself a priority of right over the appellant thereunder. The debt secured by this mortgage was due and unpaid, before the respondents acquired their positions as judgment creditors of the mortgagor.

Thus, in point of fact, and without reference to the appellant's mortgage, the debtor had but an equity of redemption in the property. Now it is well settled law that, on default in the payment of the debt secured by a chattel mortgage, the title to the mortgaged property becomes vested in the mortgagee, and that all that remains to the mortgagor is a mere equity — the equity of redemption — and further, that such equity is not a subject of levy and sale under execution. On default in payment, the title to the property becomes absolute at law in the mortgagee. The decisions in support of this doctrine are too numerous and familiar to require citation. Such being the case, the mortgagor had no leviable interest in the property when the respondents' executions were delivered to the sheriff, nor, as the case shows, did he ever after acquire any, consequently the executions did not, as is claimed, bind the property. In this view, the case is entirely different from that first above considered, when it was examined on the hypothesis that the appellant's illegal claim alone intervened to prevent a levy and sale of the property, under the respondents' executions. Giving effect, however, to Falls' mortgage, and the

mortgagor, the execution debtor, had but a bare equity — an equity of redemption only. Now, following the logic of the law, before the respondents could assert any right whatever in regard to the property, they must show themselves possessed of this equity, or of a special claim upon it, and this, if predicated on compulsory proceedings, could only be done by showing, in court, an execution returned unsatisfied against the debtor; that is, they must present themselves in court as having exhausted their remedy at law; then having secured to themselves the debtor's equity of redemption, they could redeem as to valid liens, and have such further relief, against fraudulent and illegal claims, as they could show themselves entitled to, and could employ the aid of the court in that behalf. (*McDermutt* v. *Strong*, 4 Johns. Ch., 691.) And it would matter not whether they were in court as plaintiffs or defendants, their rights would depend on what they were able to aver and prove. They would then be in court asking its aid, *first*, to vest them with the debtor's equity, and *secondly*, to make it available and valuable to them, according as their right should be made to appear. The question then would be as between any one who could raise the question and the judgment creditors, whether the latter were in a position to ask such aid from the court; that is, aid against property not liable to be levied on and sold under execution. It is the settled law in such case, that the creditor must present himself with execution returned unsatisfied. This was the ancient rule in equity, and is now statutory. So it was decided in very many of the cases above referred to, in connection with that other rule, in verification of which they were cited, that to entitle a judgment creditor at law, to the aid of a court of equity to obtain satisfaction of his judgment against a defendant, out of property not liable to be levied upon by execution, he must show not only an execution issued, but returned *nulla bona ;* jurisdiction is made to depend on such return. Now if the appellant may here raise this question against the respondents, the latter must fail in their claim to priority of right to the avails of the mortgaged property. Their executions were not returned, but remained in the hands of the sheriff, even down to trial and judgment. Thus giving effect to the Falls mortgage, they had not exhausted their remedy at law, hence, were not in a position to assail

the appellant's mortgage with a view to obtain a priority of right over it. Such is the result in case the appellant may wield the Falls mortgage for his own protection. But what concern had the appellant with that mortgage, as regards any issues raised in his suit? He set up a claim to the property under his own mortgage, and brought the respondents into court on that claim, stating that they had, or claimed to have, some interest or lien upon the same; and averring that such interest or lien was subordinate to his own. On this last averment the respondents took issue, and set up a priority of right. Thus the issue was between those parties, and was to be determined on the force and effect to be given their respective claims. Standing on these claims alone, leaving out of the case the rights of other parties, and the respondents hold the priority of right. Could the appellant make his own claim good against his adversary on the record, by the introduction of a claim of a third party? Could he force an issue between other parties for his own benefit? Was not the matter of the Falls mortgage entirely *res inter alios acta?* It was for Falls to insist on his lien and on the forfeiture, as he might elect. It was not for the appellant to elect for him. That was a subject outside the issue he had tendered to the respondents, which they had accepted. The question was between these parties on the record, and on the issue presented by the record. The appellant set up his claim on his mortgage, and challenged the respondents to a contest on that, or to acquiescence. It was sufficient for the latter to answer the claim as presented by his adversary on the record. If this conclusion be sound, the subject of the Falls mortgage should be left out of the case in determining the rights of these litigants; and it must then follow that the judgment appealed from is right. The third conclusion of law of the learned judge is not sound in the view of the case above taken, but the judgment seems to be right, independent of that finding. It should not therefore be reversed.

Judgment affirmed with costs.

LEARNED, P. J.:

It is important to understand how the question to be decided arises.

The plaintiff commenced this action to foreclose a mortgage made by Van Hoesen upon a mill and other property. The complaint describes the mortgage as covering the fixtures, machinery and chattels; but does not aver the filing of the instrument as a chattel mortgage. It avers that Beale and Morris have a subsequent lien "by way of mortgage." Beale and Morris by a supplemental answer aver that they have a prior lien as to the personal property, by virtue of judgment and execution against Van Hoesen, on causes of action which arose before the filing of the plaintiff's instrument as a chattel mortgage.

Prior to the commencement of this action, another chattel mortgage on the same personal property to one Falls had been executed and the debt secured had become payable, and default had been made.

After the commencement of this action and before the recovery of Beale and Morris' judgments against Van Hoesen, a receiver of the real and personal property was appointed herein.

After Beale and Morris had recovered their judgments and issued their executions, they commenced an action against this plaintiff. Van Hoesen, Falls and the receiver, setting forth these facts and seeking to have the Stewart mortgage declared void as to them in respect to the personal property.

Thereupon the powers of the receiver were extended to the subject-matter of the second action; and by an order entitled in both, he was directed to sell the personal property; to pay therefrom the Falls mortgage and deposit the balance subject to the order of the court. The real estate has been sold by judgment in this action, and no question arises in regard to it. The receiver has sold the personal property, paid off the Falls mortgage and brought the balance into court. And the question is : Does that balance belong to Stewart or to Beale and Morris? There is no claim that it belongs to Van Hoesen or Falls or any one else. The mortgage of Stewart on the personal property was void as against the debt contracted to Beale and Morris before the filing of that mortgage. (*Parshall* v. *Eggert*, 54 N. Y., 18 ; *Thompson* v. *Van Vechten*, 27 id., 581.) But the plaintiff urges that Beale and Morris cannot assert that this mortgage is void, because they have not levied their execution. Now the plaintiff had in his own suit obtained the

appointment of a receiver of this personal property, and had thus prevented Beale and Morris from making a levy. And the doctrine therefore which the plaintiff contends for is this: that the mortgagee of a chattel mortgage, which is void against creditors because it is not filed, may obtain the appointment of a receiver of the mortgaged property, and may thus prevent a creditor from asserting successfully the invalidity of the mortgage.

For after the appointment of a receiver the creditor cannot levy; and if his rights depend always on an actual levy, the appointment of the receiver defeats them. And by this ingenious contrivance the statute is practically annulled.

Now it seems to me plain that if the court, by appointing a receiver, deprived the creditors of the opportunity to levy, it should preserve to the creditors the rights which, without the interference of the court, the creditors would have obtained by levy; or, in other words, that when the court, by the intervention of a receiver, has taken possession of property, the court should not deprive a creditor of the right to show that, as to him, another creditor's security was void.

I leave out of account the Falls mortgage, because, by the action of the court in behalf of all parties, that mortgage has been redeemed, although the title to the property may have vested in Falls on default. (*Judson* v. *Easton*, 58 N. Y., 664.)

If, then, there had been no receiver appointed, and if Stewart had claimed that, by default, the personal property had vested in him, then Beale and Morris, claiming that Stewart's mortgage was void as to them, could have levied, and could thus have tried the question. But Stewart has prevented any levy by obtaining the appointment of a receiver, and now he objects that Beale and Morris have not done what, by his own act, he absolutely prevented. This is not equity; and the question here is on the distribution of funds held by a court of equity.

I see nothing in the case of *Hathaway* v. *Howell* (54 N. Y., 97), which interferes with this view. That question arose between the plaintiff, a mortgagee of chattels, and the defendant, a sheriff holding executions issued before any judgments had been legally filed. No question arose in that case as to the manner of enforcing the claim of one creditor as against another, after a court of

equity has taken into its custody the property out of which the conflicting claims are to be paid.

That seems to me to be the question here. The court has taken the property and sold it, and holds the avails. Mr. Stewart says these avails are his, because the property was mortgaged to him. Beale and Morris say they are theirs, because, as to them, Mr. Stewart's mortgage is void. So much is hardly disputed. Then, Mr. Stewart's mortgage being out of the way, they say the avails should be paid to them, because they are creditors of Van Hoesen, have recovered judgments, and have issued executions, which would have been levied on this property if the court had not prevented them.

I think their claim is just, and that the judgment should be affirmed with costs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment affirmed with costs; order to be entered as of January Term.